COUSINS, Appellee and Cross–Appellant,

v.

BROWNFIELD, Appellant and Cross–Appellee.

[Cite as *Cousins v. Brownfield* (1992), 83 Ohio App.3d 782.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1504.

Decided Nov. 19, 1992.

784

*Martin, Pergram, Browning & Parker Co., L.P.A., Dennis L. Pergram* and *James M. Dietz,* for appellee and cross-appellant.

*Brownfield & Peterman* and *Laura M. Peterman,* for appellant and cross-appellee.

---

WHITESIDE, Judge.

Defendant, Lyman Brownfield, appeals from a judgment of the Franklin County Court of Common Pleas and raises seven assignments of error as follows:

"1. The trial court erred in holding that the Plaintiff could pursue at trial a claim against the Defendant under Ohio Revised Code Section 1701.94.

"2. The Trial Court erred in holding that the Plaintiff had submitted sufficient evidence upon which his claim under Ohio Revised Code Section 1701.94 could be submitted to the jury and could further form the basis for a judgment against the Defendant.

"3. The Trial Court erred in holding that the Defendant owed the Plaintiff a fiduciary duty.

"4. The Trial Court's finding that the Defendant violated a fiduciary duty to the Plaintiff was against the manifest weight of the evidence.

"5. The Trial Court erred in allowing. the jury to consider the issue of damages and, in any event, the jury's award of compensatory damages was against the manifest weight of the evidence.

"6. The Trial Court erred in overruling the Defendant's Motion for Direct[ed] Verdict and Judgment Notwithstanding the Verdict.

"7. The Trial court erred in holding that there was evidence upon which the jury could award punitive damages and attorneys fees against the Defendant."

Plaintiff, Joseph Cousins, has filed a cross-appeal and raised a single assignment of error as follows:

"The trial court committed prejudicial error when it reduced the jury's award of $15,420 to $2,000 in connection with Mr. Cousins' claim under R.C. § 1701.94."

This action arose from some convoluted corporate dealings. Plaintiff, by his complaint, sought compensatory damages in the amount of $100,000 and punitive damages in the amount of $50,000 with respect to the corporate matters pertaining to two corporations: Mark IV Energy Corporation and Mark VI Pipeline Company. Plaintiff acquired 22.5 common shares of Mark VI Pipeline in June 1984, and loaned money to the Mark IV Energy Corporation at or around the same time, with one of the stockholders pledging 67.5 shares of Mark IV Energy Corporation as security for the loan. Although apparently not a stockholder, defendant became president and sole director of both corporations in 1985. Plaintiff sought copies of the financial report. of the corporation but did not

receive them until after this action was commenced. The case proceeded to a jury trial, resulting in a verdict for plaintiff as indicated above.

The first two assignments of error relate to the application of R.C. 1701.94, which provides in pertinent part as follows:

"(A) Every corporation which fails to:

" * * *

"(4) Mail to any shareholder making written request therefor, within the period provided for in division (C) of section 1701.38 of the Revised Code, a copy of the financial statement referred to in that section;

" * * *

"(6) * * * shall be subject to a forfeiture of one hundred dollars and * * * to a further forfeiture of ten dollars for every day that such failure continues * * *.

"(B) If any officer charged with one of the duties specified in division (A) of this section fails to perform such duty after written request by any shareholder, he shall be subject to a forfeiture of one hundred dollars, and to the further forfeiture of ten dollars for every day that such default continues * * *."

There is no question but that plaintiff made a request for some type of financial statement at various times, but did not receive any from defendant until after the commencement of this action when the financial information was furnished on February 22, 1990, plaintiff contending that the request should date back to September 18, 1985.

Defendant makes two basic contentions as to why he should not be subject to the statutory penalty. First, he contends that plaintiff did not plead or seek recovery under R.C. 1701.94 by his complaint. Second, defendant contends that the evidence does not support a finding of a failure on his part to furnish the requested financial statement, since no financial statement within the contemplation of R.C. 1701.38 and 1701.94 was ever in existence, and that such statement as was in existence could not be furnished because of inability to verify the accuracy of the information therein because of the state of disarray of the corporate records when he became president.

As to the pleading issue, paragraphs seven and eight of the complaint specifically refer to the failure of defendant to provide financial statements and other information to plaintiff despite a request by plaintiff for such information. It is true that R.C. 1701.94 is not specifically referred to in the allegations of the complaint or in the demand for judgment. However, Civ.R. 54(C) provides in pertinent part that:

"[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled; however, a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial."

Moreover, on the other hand, as defendant points out, Civ.R. 8(A) provides that:

"A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

Essentially, defendant contends that since there was no express demand for the statutory penalty provided by R.C. 1701.94(B), he was not sufficiently put on notice that he needed to defend against such a claim. However, paragraphs seven and eight of the complaint specifically refer to the factual basis for a claim for a penalty pursuant to R.C. 1701.94(B) in that they allege that defendant was requested to supply plaintiff with financial statements and failed to do so until after an action against the corporation was commenced. Defendant has suggested no relief other than the statutory penalty under R.C. 1701.94(B) that such allegations could lead to or support. Nor does the complaint allege special damage as a result of the failure to supply statements.

In addition, defendant was able to raise the issue prior to trial, and thus was aware of the foundation of the relief sought by plaintiff for failure to supply a financial statement at some unknown time prior to trial. The issue was raised immediately prior to trial by defendant who contended that relief under R.C. 1701.94 had not been pled in the complaint. Under the circumstances, defendant has not demonstrated prejudicial error. He was put on notice as to a claim that he had failed to provide financial statements even though requested to do so and had denied such allegation in his answer. The trial court did not abuse its discretion in submitting the issue to the jury.

Despite the objection prior to trial, defendant did not object to the introduction of the evidence but again raised the issue at the conclusion of plaintiff's case and, at the conclusion of all the evidence, objecting to the submission of the issue to the jury. In short, defendant has demonstrated no prejudicial error on the part of the trial court in permitting plaintiff to pursue his claim pursuant to R.C. 1701.94(B). The first assignment of error is not well taken.

■ The second issue with respect to financial statements is raised by the second assignment of error and involves defendant's contention that there were no financial statements to be produced. R.C. 1701.38 requires that every

corporation prepare a financial statement and lay it before the shareholders at the annual meeting or a meeting held in lieu thereof and shall make a copy available to any shareholder upon written request made within sixty days after notice of the meeting. Defendant's first contention is that since there was no annual meeting called during the period involved, there was no duty to furnish the requested financial statements to plaintiff. However, defendant admitted that he had consultations with McKenzie whom he considered the only stockholder, since he had the irrevocable proxy from all other stockholders except plaintiff. Defendant did not consider plaintiff a real stockholder because McKenzie told defendant that the stock issued to plaintiff was really only a security. In other words, there was evidence from which it could be inferred that there were stockholder meetings in lieu of an annual meeting attended only by McKenzie. Defendant could not avoid the obligation under R.C. 1701.38 by failing to give the stockholder who desired the financial statement notice of the stockholder "meeting" attended only by the single stockholder. The record is unclear as to whether these "meetings" or discussions were in person or by telephone. In any event, however, plaintiff was excluded by design from any such meeting and was not given notice.

■ Defendant is not entitled to avoid the mandate of R.C. 1701.38 as to financial statements by failing formally to schedule meetings and give plaintiff notice thereof. Under the unique circumstances of this case, it was not error to submit the issue to the jury, and permit the jury to conclude from the evidence that plaintiff should be excused from strict compliance with R.C. 1701.38 because he was prevented by action and inaction of defendant from making a demand for the financial statements in the precise manner contemplated by R.C. 1701.38.

■ Defendant also contends that there were no financial statements in existence which could be the subject of a request pursuant to R.C. 1701.38. However, defendant's exhibits G, H and I constitute balance sheets and statements of operations for fiscal years ending June 30, 1984 and June 30, 1985, even though they are unaudited. Defendant contends that since the accuracy of the statements could not be verified because of the state of the records, these statements do not constitute financial statements within the contemplation of R.C. 1701.38. First, the statements indicate they are "unaudited" and defendant could have, in submitting them to plaintiff, advised him that the statements were the best available even though their accuracy could not be verified. In other words, compliance with the statutory requirement was not prevented nor excused because of the questionable nature of the financial statements. Submitting them to plaintiff would have alerted him to the accumulated deficit of $51,220 as of June 30, 1984, and $539,391 as of June 30, 1985, as indicated by the unaudited

balance sheet. In addition, it would have alerted plaintiff to an alleged advance due Equity Conversion Corporation in the amount of $244,521 as of June 30, 1985.

It is the corporate structure that is somewhat confusing. Apparently, very little distinction was made between Mark IV Energy Corporation and Mark VI Pipeline Company. The stock held by plaintiff (twenty-two and one-half shares) was in Mark VI Pipeline Company. The financial statements referred to above were of Mark IV Energy Corporation. Likewise, the corporate minutes of the June 29, 1984 action without a meeting authorizing the borrowing of $15,000 were of the executive committee of Mark IV Energy Corporation. (Plaintiff's exhibit 7.) Plaintiff's exhibit 6 is a copy of an alleged assignment by McKenzie to plaintiff of sixty-seven and one-half shares of the common stock of Mark IV Energy Corporation represented by certificate number twenty-two. However, certificate number twenty-two (plaintiff's exhibit 5) is a certificate for sixty-seven and one-half shares held by McKenzie in Mark VI Pipeline Company. Similarly, the promissory note (plaintiff's exhibit 4), promising to pay Cousins $15,000 and pledging sixty-seven and one-half shares of common stock, is executed by Mark VI Pipeline Company and contains a certificate of McKenzie that he delivered certificate number twenty-two for sixty-seven and one-half shares of Mark VI Pipeline Company to plaintiff. The check by which plaintiff allegedly paid $20,000 was made payable to "Mark IV, Inc." Of this check, $15,000 allegedly represented the loan and the other $5,000 represented the purchase of the twenty-two and one-half shares.

Defendant testified to the effect that Mark IV was engaged in the business of oil drilling, operation of oil wells and the sale of fractional interests in oil wells. Mark VI was engaged in the business of building and operating a pipeline for the purpose of collecting gas from Mark IV wells and discharging it into a pipeline owned by Tenneco. In other words, the companies were interrelated and apparently operated as if they were a single company. There is no clear indication that there were separate records maintained for the two corporations or even that separate checking accounts were maintained. A third corporation also became involved, namely Equity Conversion Corporation, of which defendant was also a director and officer. According to defendant, he, his daughter Candace, Robert Ryan, H. Daniels Smith, and James T. Stewart made advancements to the Mark IV and Mark VI corporation apparently through the Equity Conversion Corporation which had assets. He indicated that the total advance was over $100,000 and that, as a result, Equity Conversion acquired some Mark IV and Mark VI assets. In order to complete the transactions involving transfer of assets, it would appear necessary that a stockholders' meeting be held at some point. See R.C. 1701.76.

As indicated above, a financial statement was in existence and defendant should have made a copy available to plaintiff upon his request even if a disclaimer as to the accuracy of the statement were necessary. Accordingly, the second assignment of error is not well taken.

The cross-assignment of error relates to the same issue as the first two assignments of error. The jury awarded $15,420 as the statutory damages for failure of defendant to provide financial statements to plaintiff. The trial court reduced this award to $2,000. Plaintiff contends that this was prejudicial error. Although R.C. 1701.94(B) provides for the penalty that the jury awarded, R.C. 1701.94(C) provides that:

"The court in which an action is brought to enforce any forfeiture under this section may reduce, remit, or suspend such forfeiture on such terms as it deems reasonable when it appears that the failure was excusable or that the imposition of the full forfeiture would be unreasonable or unjust."

The trial court found that the imposition of the full forfeiture would be unreasonable or unjust. It is within the discretion of the trial court to reduce the statutory award. Under the circumstances herein, plaintiff has not demonstrated an abuse of discretion on the part of the trial court. Although plaintiff did request monthly accounting in December 1985, most of the earlier correspondence related to the obtaining of either a stock certificate for sixty-seven and one-half shares of Mark VI Pipeline Company or the payment of the $15,000 loaned to the corporation. Only the October 16, 1987 letter specifically refers to financial statements. Nor did any of the letters complain because of a lack of the holding of a stockholders' meeting. There was discretion in the trial court to reduce the penalty, and we find no abuse of discretion. The cross-assignment of error is not well taken.

By his third assignment of error, defendant contends that the trial court erred in permitting the jury to award damages to plaintiff individually. Defendant points out that although a director of a corporation occupies a fiduciary relationship to his shareholders, a breach of this duty harms the corporation and the remedy for a shareholder is a derivative action on behalf of the corporation, citing Wing Leasing, Inc. v. M & B Aviation, Inc. (1988), 44 Ohio App.3d 178, 542 N.E.2d 671. He contends that an individual shareholder does not have an independent action for private damages against a director or officer of the corporation, citing Adair v. Wozniak (1986), 23 Ohio St.3d 174, 23 OBR 339, 492 N.E.2d 426, the syllabus of which holds that:

"A plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation."

Plaintiff relies upon *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217, the syllabus of which holds as follows:

"1.  Typically, a close corporation is a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market.

"2.  Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable.

"3.  Claims of breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ.R. 23.1."

Defendant is neither a majority stockholder nor a third-party of the type involved in *Adair, supra.* Rather, he was president and director of the corporations. Nevertheless, defendant's fiduciary duty to plaintiff was no less than that of the defendants in *Crosby* and *Adair, supra,* to the plaintiffs therein. The trial court did not err in permitting plaintiff individually to bring an action directly against defendant for injuries plaintiff sustained which are not in common with all other shareholders. According to plaintiff's testimony, all other shareholders in effect abandoned their interest or had "given up their shares" except McKenzie who apparently transferred or agreed to transfer all his shares to plaintiff. Accordingly, the third assignment of error is not well taken.

By the fourth assignment of error, defendant contends that the finding that defendant violated a fiduciary duty owed to plaintiff was against the manifest weight of the evidence. Under such a contention, the judgment would be affirmed if the findings are supported by competent, credible evidence. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. In addition, the evidence referred to above, the remaining assets of the Mark IV and Mark VI corporations, were sold at a foreclosure sale for $40,000 and purchased by Strata Corporation. Defendant contended that thereafter everything he did, including obtaining funds from his daughter and others, was an effort to place the wells and pipeline back in service and to resolve the financial problems of the companies. The jury was not required to accept the testimony of defendant, but, instead, could give to it such weight as it deemed appropriate.

In any event, defendant's efforts were not successful and eventually the remaining assets of the corporation were sold to Strata Corporation through an

agreement with Strata Corporation to which defendant, Robert Ryan, H. Daniel Smith, defendant's daughter, Mark IV Energy Corporation, Mark VI Pipeline Company, and Equity Conversion Corporation were parties. Defendant executed this agreement not only on behalf of himself, but also on behalf of Equity Conversion Corporation, Mark IV Energy Corporation, and Mark VI Pipeline Company, as president of each. This agreement recites that two oil and gas wells (Plotsky nine and ten) are owned by Ryan, defendant, his daughter, and Stewart, which had been producing wells generating substantial sums of money which had been used to buy equipment to pay debts and operational expenses of Mark IV and Mark VI. The record is unclear as to any relationship between the oil and gas leases of Mark IV and the oil and gas wells Plotsky nine and ten.

As part of the purchase agreement, Strata agreed to issue 100,000 common shares to defendant; 50,000 to Ryan; 50,000 to Smith; 40,000 to defendant's daughter; and 10,000 to Stewart. The evidence indicates that the value of these shares was about $ .25 per share. In addition, by this agreement, all the assets of Mark IV and Mark VI, including the pipeline was conveyed to Strata. There is no indication that any of these transfers of the property of Mark IV and Mark VI were authorized by stockholder action, but it is affirmatively established that defendant gave plaintiff no notice of the disposition of all of the corporate assets of the two corporations. In short, there was competent, credible evidence supporting a determination by the jury that defendant breached his fiduciary duties and injured plaintiff individually. The fourth assignment of error is not well taken.

By the fifth assignment of error, defendant contends that the trial court erred in overruling his motions for a directed verdict and judgment notwithstanding the verdict. For the same reasons stated with respect to the fourth assignment of error, and stated *infra* with respect to the sixth and seventh assignments of error, the fifth assignment of error is not well taken.

By the sixth assignment of error, defendant contends that the trial court erred in permitting the jury to consider the issues of damages and that the jury's award of compensatory damages is against the manifest weight of the evidence. Neither contention is well taken.

As indicated above, there was evidence upon which damages could be predicated. The jury's award of compensatory damages is supported by competent, credible evidence. It was undisputed that plaintiff loaned $15,000 to the corporation in 1984. The principal was not paid, the sixty-seven and one-half shares for security were not transferred, and no interest was paid, the note not specifying an interest rate. In his closing argument, plaintiff suggested ten percent interest on $20,000 for seven years. However, the verdict is closer to the amount of ten percent interest on $15,000 for seven years plus the principal, the

verdict being $24,487.50 compensatory damages. Such verdict is supported by competent, credible evidence, and, accordingly, the sixth assignment of error is not well taken.

By the seventh assignment of error, defendant contends that the trial court erred in permitting the jury to award punitive damages and attorney fees. Ohio law is fairly strict as to the requirements for punitive damages, requiring first proof of actual damages, and, second, proof that the defendant's conduct was so intentional, reckless, wanton or grossly negligent, as to evidence actual malice. The Supreme Court in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, defined "actual malice" as to be one of two general categories. The first is characterized by hatred, ill will or a spirit of revenge. The second category is evidenced by extremely reckless behavior revealing a conscious disregard of a great and obvious harm to another. Actual malice requires conscious, deliberate or intentional wrongdoing, in the absence of which punitive damages cannot be awarded. Defendant contends that the evidence does not permit a finding that his conduct amounted to actual malice. Had the jury accepted defendant's testimony in its entirety, no actual malice could be found and no punitive damages could be awarded. However, the jury was not required to accept defendant's testimony, but, instead, could accept such parts of his testimony as it found credible and entitled to weight. The jury also was entitled to make all reasonable inferences from the evidence, including defendant's testimony.

No objection was made to the trial court's charge to the jury which included a statement that "[a]ctual malice is a conscious disregard for the rights of other persons that has a great probability of causing substantial harm." There is no reason to believe the jury ignored this charge of the trial court, and plaintiff does not contend that it is erroneous. The evidence indicates that despite repeated requests by plaintiff through his counsel, defendant ignored plaintiff's ownership interest in Mark IV and Mark VI Corporations as a shareholder, and, instead, as the sole director and president (but not a shareholder), made decisions concerning the assets of the corporation and the operation of the business of the corporation without calling a stockholders' meeting, or notifying plaintiff of any such meetings as may have been held, defendant indicating he had consulted on occasion with McKenzie, the other stockholder. The jury award of punitive damages and attorney fees is supported by competent, credible evidence. The seventh assignment of error is not well taken.

For the foregoing reasons, all seven of defendant's assignments of error, and plaintiff's cross-assignment of error are overruled, and the judgment of the Franklin County Common Pleas Court is affirmed.

*Judgment affirmed.*

BOWMAN and PEGGY BRYANT, JJ., concur.