YACKEL, Appellee,

v.

KAY, Appellant.

[Cite as Yackel v. Kay (1994), 95 Ohio App.3d 472.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65158.

Decided May 16, 1994.

474

*Ulmer & Berne* and *Marvin L. Karp,* for appellee.

*Hutchins, Wheeler & Dittmar, Sander A. Rikleen* and *James S. Dittmar; Thomas & Boles* and *Edgar H. Boles,* for appellant.

KRUPANSKY, Judge.

In this direct *ultra vires* action, defendant-appellant Leslie A. Kay ("Kay") timely appeals from three judgment entries of the Cuyahoga County Court of Common Pleas awarding damages to plaintiff-appellee Kenneth R. Yackel ("Yackel") against Kay in the sum of $312,600 with interest. Yackel originally brought this action against both Kay and Zatko Pulley Manufacturing Corporation ("Zatko") but subsequently voluntarily dismissed Zatko as a defendant.

Zatko, a close corporation, *i.e.,* a corporation having only a few shareholders, was formed in 1971 by Kay who at the time of incorporation caused one hundred shares of stock to be issued. At the time relevant herein, Kay was President of Zatko and owned, along with three of his adult daughters, sixty percent of the stock in Zatko which he controlled. In 1979, Yackel purchased ten percent of the

Zatko stock for $25,000 and was made Vice President of Sales.[1] The remaining thirty percent of stock was owned by Max Horvat, Executive Vice President of Zatko, who essentially managed the Zatko corporation for Kay since Kay was also President of Premier Manufacturing Company.

In his complaint, Yackel alleged that from 1980 through 1990, Kay breached his fiduciary duty owing to minority stockholders of Zatko by using his position as majority shareholder to derive personal financial benefit from Zatko thereby depriving minority shareholders of their just share of the corporation's profits. In his appellate brief, Yackel specifically stated the evidence revealed Kay breached his fiduciary duty by causing Zatko to, *inter alia*, (1) pay Kay an excessive salary of $67,500 per year plus bonuses which in 1989 and 1990 alone amounted to $412,000; (2) pay Kay's personal automobile and gasoline expenses in the amount of $73,244[2]; (3) pay the premium for medical insurance covering Kay, his former wife and an unidentified party named Rose Kline in the amount of $39,793; (4) pay Kay's personal American Express and Diner's Club bills in the amount of $193,672; (5) pay lease payments to Kay for equipment used by Zatko which was already owned by Zatko in the amount of $930,000; (6) pay Kay's personal travel expenses in an amount not stated; and (7) pay property taxes on real property owned by Kay also in an amount not stated.

Yackel also alleged in his complaint that Kay conspired with the remaining shareholders and subsequently orchestrated Yackel's removal as Vice President of Sales for Zatko in retaliation for Yackel's institution of the within action. Yackel prayed for Kay to reimburse the corporation and Yackel for monies wrongfully taken, for Kay to cease his illegal actions and for compensatory and punitive damages totalling $500,000.

In response, Kay filed a counterclaim against Yackel claiming that Yackel, *inter alia*, (1) engaged in extortion and exerted undue influence and duress upon Kay; (2) intentionally inflicted emotional distress upon Kay; and (3) libeled Kay. Thereafter, Kay filed a motion for summary judgment which the court overruled and the case proceeded to trial before a jury.

At the close of all the evidence, Yackel moved for directed verdict on all counts of Kay's counterclaim. The trial court granted the motion with respect to the claims of extortion and intentional infliction of emotional distress but permitted the claim of libel to proceed to the jury. Kay then moved for a directed verdict

---

1. Yackel purchased the shares which originally belonged to Kay's divorced wife, which amounted to ten percent of the Zatko stock.

2. The total $73,244 was computed by adding together the following: (1) Gasoline credit cards in the amount of $15,889; (2) Automobile insurance for Kay's two Rolls Royces in the amount of $46,255; and (3) Automobile rental in the amount of $11,100.

on the grounds Yackel had no standing to pursue an action directly against Kay, *i.e.,* Yackel's action should have been brought as a derivative action against Zatko pursuant to Civ.R. 23.1 and on the ground that Yackel had not presented evidence sufficient to support his claims against Kay. The court overruled Kay's motion for directed verdict and the case was submitted to the jury.

Kay then submitted fourteen proposed jury instructions and seventeen interrogatories for the jury on which the court declined to charge. Kay objected to the court's refusal to charge the jury with his jury instructions but made no further objections to the jury instructions given by the trial judge or to the trial judge's refusal to submit Kay's interrogatories to the jury. Thereafter, the jury found for Yackel against Kay on the issues of breach of fiduciary duty and wrongful discharge and awarded compensatory and punitive damages. The jury also found for Yackel with respect to the charge of libel.

Kay subsequently filed motions for judgment notwithstanding the verdict or, in the alternative, new trial which the court denied. He then filed a motion for relief from judgment pursuant to Civ.R. 60(A) and (B) with respect to only the award of prejudgment interest. The court granted this motion in part and ordered Kay to pay interest on only the compensatory damages from the date of judgment entry. The instant appeal followed.

Logically, appellant's second assignment of error will be considered first and follows:

"II. The trial court erred by permitting a minority shareholder to bring a direct action to recover alleged damages arising out of excessive compensation paid to the controlling shareholder of a close corporation."

This assignment lacks merit.

Appellant claims in this second assignment that Yackel's direct action against Kay should have been brought as a derivative action against only Zatko in accordance with Civ.R. 23.1.[3] The Ohio Supreme Court, however, in *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 109–110, 548 N.E.2d 217, 220–222, confronted a fact situation analogous to that in the case *sub judice* in which majority shareholders acted to exclude minority shareholders from sharing in corporate profits. The Supreme Court stated as follows:

"[I]f we require a minority shareholder in a close corporation, who alleges that the majority shareholders breached their fiduciary duty to him, to institute an

---

**3.** Civ.R. 23.1 provides for derivative actions by shareholders and states in relevant part as follows: "In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation * * * the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law."

action pursuant to Civ.R. 23.1, then *any recovery would accrue to the corporation and remain under the control of the very parties who are defendants in the litigation. Thus, a derivative remedy is not an effective remedy because the wrongdoers would be the principal beneficiaries of the recovery.* * * *

"* * *

"Accordingly, we hold that claims of a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, *may be brought as individual or direct actions* and *are not subject to the provisions of Civ.R. 23.1.*" (Emphasis added). See *Cousins v. Brownfield* (1992), 83 Ohio App.3d 782, 615 N.E.2d 1064; *Frank Lerner & Assoc., Inc. v. Vassy* (1991), 74 Ohio App.3d 537, 599 N.E.2d 734.

In the case *sub judice*, Yackel also alleged in his complaint he was wrongfully discharged and Kay's actions deprived him of his share of corporate profits; Yackel prayed to be compensated accordingly. Yackel, therefore, possessed a cause of action against Kay which was properly brought, pursuant to *Crosby, supra,* directly or individually against Kay. As the Supreme Court astutely foresaw, if Kay had been ordered to reimburse only the corporation, Kay as majority shareholder would have been the "principal beneficiar[y]" of the recovery. *Crosby, supra.* Based upon the foregoing analysis, the trial court did not err when it denied Kay's motion for directed verdict and, consequently, permitted the within action to proceed directly against Kay. Appellant's second assignment of error is, therefore, not well taken and is overruled.

Appellant's first assignment of error raises five distinct allegations, each of which claims the trial court erred when it charged the jury. The theme of this assignment of error is stated in "I" and follows:

"I. In a minority shareholder's direct action against the controlling shareholder of a close corporation for breach of fiduciary duty, the trial court erred when it failed to provide the jury with proper instructions."

■ Civ.R. 51 [4] permits any party to timely file written requests of proposed jury instructions. Ordinarily, requested jury instructions should be given by the trial judge provided (1) they are correct statements of the law as applied to the facts in a given case; and (2) where reasonable minds might reach the conclusion sought by the instructions. *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio

---

4. Civ.R. 51(A) states in relevant part as follows: "[A]ny party may file written requests that the court instruct the jury on the law as set forth in the requests. * * *

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"

App.3d 85, 619 N.E.2d 1172; *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 14 OBR 250, 470 N.E.2d 941. Civ.R. 51 also precludes a party from assigning the jury charge as error on appeal where the party did not object to the charge at trial.

In the case *sub judice*, we note appellant proffered written requests of proposed jury instructions as well as jury interrogatories. At trial, he objected to only the trial judge's decision not to charge the jury pursuant to Kay's jury instructions. In order to provide clarity, each of the five allegations contained in Assignment of Error No. I will be considered seriatim as follows:

"(A) By failing to explain the proper legal standard for determining whether the controlling shareholder breached his fiduciary duty by receiving excessive compensation and instead focussing [*sic* ] the jury on whether all amounts paid by the corporation were proportionate to stock ownership [the trial court erred]."

Kay proffered Jury Instructions No. 9 and 12, which addressed the issue raised in allegation (A), *i.e.*, breach of fiduciary duty. A relevant portion of Kay's Jury Instruction No. 9 follows:

"The board of directors of an Ohio corporation has the authority to establish reasonable compensation for directors and officers for services to the corporation, including their own compensation. Therefore, *it is not a violation of fiduciary duty for the directors of Zatko, including Mr. Kay, to have paid Mr. Kay a salary, bonus, executive fringe benefits and other forms of compensation, if such compensation was reasonable.* If you find that Mr. Kay's aggregate compensation from Zatko, in light of all the facts and circumstances, was reasonable, *then you must find in favor of Defendant Leslie Kay.*" (Emphasis added.)

Kay's Jury Instruction No. 12 contained a comparable argument.

█ In a close corporation, a majority shareholder breaches a fiduciary duty when that shareholder manipulates his or her control over the close corporation in order to unfairly acquire personal benefits owing to or not otherwise available to minority shareholders of the close corporation. *Crosby, supra; McLaughlin v. Beeghly* (1992), 84 Ohio App.3d 502, 617 N.E.2d 703; *Cousins, supra; Gigax v. Repka* (1992), 83 Ohio App.3d 615, 615 N.E.2d 644. Since the issue is not whether the acts of the corporate president were reasonable but, rather, whether the acts worked to the deprivation of entitled minority shareholders, Kay's statements of the law in Jury Instructions Nos. 9 and 12 based upon the cause of action herein were not correct law. Therefore, in accordance with *Sapp* and *Hardiman, supra,* the trial judge did not err when he refused to charge the jury in this manner, and allegation (A) lacks merit.

Appellant's second allegation follows:

"(B) By failing to instruct the jury how to calculate the minority shareholder's damages caused by the controlling shareholder's receipt of excessive compensation [the trial court erred]."

■ We initially note appellant's proposed jury charges did not address the issue Kay assigns as error in allegation (B), *i.e.,* neither Kay's jury instructions nor Kay's jury interrogatories addressed the correct manner in which the jury should calculate Yackel's damages. Kay may not assign as error on appeal the trial court's failure to charge the jury with a proposed jury instruction that Kay never submitted to the court.

■ As to the issue Kay raises with respect to calculation of damages, an appellate court will not consider issues which the appellant failed to raise in the trial court. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629; *Cleveland v. Assn. of Cleveland Fire Fighters, Local 93, Internatl. Assn. of Fire Fighters* (1991), 73 Ohio App.3d 220, 596 N.E.2d 1086. Thus, Kay may not raise this issue on appeal. In accordance with the foregoing analysis, allegation (B) lacks merit.

Appellant's third allegation follows:

"(C) By instructing the jury that, in addition to a direct action for breach of fiduciary duty, the minority shareholder had a separate cause of action against the controlling shareholder for wrongful termination of employment [the trial court erred]."

■ In allegation (C), Kay asks this court to find the trial judge erred when he charged the jury that Ohio law provided Yackel with a cause of action for wrongful discharge. Whether Ohio provides a cause of action for wrongful discharge to a plaintiff is a question of law rather than of fact. It is axiomatic that only questions of fact are within the province of the jury while the trial judge resolves questions of law. We note Kay raised the issue of whether Yackel possessed a cause of action for wrongful discharge in his motion for summary judgment. The trial court denied Kay's summary judgment motion.

Ohio recognizes an action for wrongful discharge and the trial court properly charged the jury on the subject. *Gigax, supra,* held a minority shareholder/employee who was terminated from his job by majority shareholders did, in fact, possess a cause of action for wrongful discharge. Based upon the foregoing analysis, Kay's allegation (C) lacks merit.

Appellant's fourth allegation follows:

"(D) By failing to instruct the jury to determine whether the minority shareholder waived his right or was estopped to complain about lease payments made by the corporation to the controlling stockholder [the trial court erred]."

■ Kay proffered Jury Instruction No. 1 which addressed the defenses of waiver and estoppel. Essentially, this request would have charged the jury to determine whether Yackel had waived, or was estopped from exerting, his breach of fiduciary duty claims by both his actions and omissions as a vice-president of Zatko. However, the breach by a majority shareholder in a close corporation of a fiduciary duty imposed by law does not rest upon whether or not a minority shareholder consented or acquiesced to that breach.

■ Moreover, the doctrine of estoppel is based upon the premise that a party, by his or her conduct, has induced another to change position in good faith reliance upon that conduct. *Kosa v. Pruchinsky* (1992), 82 Ohio App.3d 649, 612 N.E.2d 1291. When this statement of law is applied to the facts in the case *sub judice*, the following anomalous argument is generated: *Kay was induced by Yackel's silence to breach Kay's fiduciary duty owing to Yackel* and *Kay, therefore, relied in good faith upon Yackel's silence as Yackel's implied consent to Kay's breach of the fiduciary duty.*

From this perspective, Kay's proposed jury instruction was both absurd and immaterial to the resolution of the case *sub judice* and the trial judge was not required to so charge the jury. Civ.R. 51.

■ More important, however, there exists a presumption that the one owing a fiduciary duty by virtue of superior position must go forward with the burden of proof on the fairness of business transactions. The fiduciary must demonstrate that the one to whom the fiduciary duty was owed had full knowledge of and approved the transactions. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 542 N.E.2d 654. In the case *sub judice* Kay offered no evidence to support his claim Yackel *knowingly* ratified or approved of Kay's business transactions or that Yackel waived his rights with respect to Kay's fiduciary responsibilities. On the contrary, Kay presented mere allegations which were drawn from ambiguous inferences.

In addition, Yackel testified at trial he did not realize he possessed, as a minority shareholder, the right to bring an action for breach of fiduciary duty against Zatko or Kay until after Yackel, in 1990, consulted an attorney and then commenced the within action. Moreover, Yackel possessed no direct cause of action against Kay prior to December 20, 1989 when *Crosby, supra,* was decided. Had Yackel instituted a derivative action against Zatko prior to 1989, rather than a direct action against Kay subsequent to 1989, any recovery would have accrued to Kay as majority shareholder rather than to Yackel and as noted in *Crosby,* Kay would have been the primary beneficiary of the recovery. Based upon the foregoing analysis, the trial judge did not err when he refused to charge the jury with the elements of estoppel and waiver, and allegation (D) lacks merit.

Appellant's final allegation follows:

"(E) By failing to submit to the jury the substance of the controlling share-holder's written interrogatories [the trial court erred]."

In issue (E) of Kay's first assignment of error, Kay challenges the trial judge's refusal to charge the jury with the "substance" of his submitted interrogatories for the jury. We note Kay did not object to the trial judge's refusal to submit either the "substance" of his interrogatories or the interrogatories themselves. Since Kay did not formally object at trial, Kay may not raise this issue on appeal and allegation (E) lacks merit. Civ.R. 51.

Appellant's entire first assignment of error, *i.e.*, allegations (A) through (E), therefore, lacks merit and is overruled.

Appellant's third and final assignment of error follows:

"III. The trial court erred when it awarded punitive damages:

"(A) By awarding punitive damages where the allegedly wrongful conduct did not cause the minority shareholder to suffer any compensable damage; and

"(B) By awarding punitive damages that were more than five (5) times greater than the maximum amount of damages caused by the allegedly malicious conduct."

This assignment lacks merit.

Kay first alleges Yackel did not suffer actual damages due to his wrongful termination and was not, therefore, entitled to punitive damages. Pursuant to R.C. 2315.21,[5] an award of punitive damages must be based upon the existence of two prerequisites, *viz.*, (1) proof of actual damages; and (2) proof that the defendant's conduct was so reckless, intentional, wanton or grossly negligent that actual malice is demonstrated. *Cousins, supra.*

In the case *sub judice*, Kay did not deny the business transactions or the termination of Yackel but, rather, defended his actions as being reasonable and based upon legitimate business purpose. On June 25, 1992, the jury awarded compensatory damages to Yackel in the amount of $212,600 which the jury expressly proportioned as follows:

1. $194,000 for Kay's breach of fiduciary duty; and

2. $18,600 for Yackel's wrongful termination.

---

5. R.C. 2315.21 states as follows:

"(B) [P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice * * *;

"(2) The plaintiff in question has adduced proof of actual damages * * *."

In addition, the jury, in its answer to Interrogatory No. 3, found Kay "liable to defendant Kenneth R. Yackel for punitive damages" pursuant to R.C. 2315.21(C)(2).[6] In compliance with the statute, the amount of punitive damages was determined by the trial judge. The trial court held a hearing on October 22, 1992 with respect to the award of punitive damages and, on December 17, 1992, awarded Yackel $100,000 in punitive damages against Kay based upon the $212,600 awarded by the jury in compensatory damages.

 Appellant contends Yackel sustained no actual damages from his wrongful termination but, rather, suffered actual damages with respect to only Kay's breach of fiduciary duty. We note the jury award of compensatory damages for wrongful discharge in the amount of $18,600 and for Kay's breach of fiduciary duty in the amount of $194,000 was based upon the evidence introduced by Yackel at trial.

Yackel presented evidence that, prior to his wrongful termination from Zatko, he earned a salary of $10,400 per year in addition to any share of the profits he was entitled to receive. Yackel also presented evidence that Zatko had declared year-end bonuses on a number of occasions which were paid to, *inter alia*, Kay, Yackel and nonsalaried employees of Zatko who were not shareholders. When Yackel was wrongfully discharged, he not only lost his salary but also his bonuses. Yackel also presented evidence from which a reasonable jury could have concluded he suffered actual damages in the amount of $194,000 due to Kay's breach of fiduciary duty.

The transcript before us demonstrates the trial judge twice charged the jury to distinguish between Yackel's loss due to Kay's breach of fiduciary duty versus Yackel's loss due to wrongful termination. Based upon the evidence introduced at trial, a reasonable jury could have made this distinction and awarded compensatory damages to Yackel for both wrongful discharge in the amount of $18,600 and breach of fiduciary duty in the amount of $194,000. Kay's contention that Yackel suffered no actual damages from the wrongful discharge, therefore, lacks merit.

 As noted *supra*, although Yackel incurred actual damages from his wrongful discharge, he was also required to demonstrate Kay discharged Yackel with actual malice in order to prevail on the claim for punitive damages. Actual malice requires intentional, conscious wrongdoing, without which punitive damages cannot be found. When adjudicating whether actual malice was present, the

---

6. R.C. 2315.21(C)(2) states as follows:
 "In a tort action, whether the trier of fact is a jury or the court, if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of those damages shall be determined by the court."

trier of fact is charged with determining the credibility of the witnesses and weighing the evidence. *Cousins, supra.* Kay did not object when the trial judge instructed the jury with respect to actual malice.

Furthermore, Yackel stated at trial that prior to seeking advice from his attorney and prior to instituting the within action, he addressed personal letters to Kay requesting Kay to remedy the business transactions that worked deprivation upon Yackel. Yackel further testified he expressed these concerns in person to Kay, and Yackel stated as follows with respect to Kay's response:

"And he said I'm a minority shareholder, I don't have any rights and I should be happy with what I'm getting and that's the way it was going to be."

In addition, the following colloquy occurred while Yackel was under direct examination at trial in which Yackel described his confronting Kay with Kay's questionable business transactions:

"Q. By benefits you're talking about these things here we've got on the board [the list of Kay's alleged illegal business transactions]?

"A. [Yackel] Well, I really didn't go into personal expenses, I went into things like cars and health insurance and things like that for the most part. I didn't really go into the personal credit card thing.

"Q. Okay.

"A. But I was just trying to show Les [Kay], I was saying I am not getting my fair share, fair distribution. I indicated what his salary was, what Max's salary was and my salary. I said, in order to bring things to partity [*sic*], they were both making 67 [$67,500] plus cars and other fringes, I indicated my salary should be raised at least $5200 from 10,400, and I wanted to know what was the best way to go about having this done.

"And he came back and said I was being greedy and things weren't going to change, that I didn't have any say so, again, okay, as far as the corporation was concerned.

"And then I—at that point I said, but look how unfair this is. I said, in addition to all this, you're taking all these personal expenses which the corporation was paying for which is income to you, I said, it's really unfair.

"At which point he got very upset with me and indicated that his other partners at Premier had never dare [*sic*] challenged him on that kind of thing before and I'd better watch my step and he never watned [*sic*] to hear me talk about it, again."

Certainly, a reasonable trier of fact could have found Kay's foregoing statements were made with actual malice especially when considered in light of the

heightened fiduciary duty owing minority shareholders in close corporations by majority shareholders. The *Crosby* court spoke of this duty at 47 Ohio St.3d at 108, 548 N.E.2d at 220, as follows:

"Courts in sister states and Ohio appellate courts have found a *heightened fiduciary duty* between majority and minority shareholders in a close corporation. This duty is similar to the duty that *partners owe one another in a partnership* because of the fundamental resemblance between the close corporation and a partnership. [The standard of the duty has been found] to be of the ' "*utmost good faith and loyalty.*" ' " (Emphasis added and footnote omitted.)

In sum, the jury determined the credibility of the witnesses, weighed the evidence and found Yackel sustained compensatory damages in the amount of $18,600 from his wrongful termination from Zatko. Based upon the foregoing evidence, *i.e.*, Yackel's salary of $10,400 per year and the payment of year-end bonuses, a jury could reasonably have reached this conclusion. In addition, a reasonable jury, based upon the foregoing colloquy, could reasonably have found Kay acted with actual malice and, in so doing, owed punitive damages to Yackel. *Cousins, supra.*

We also note an interesting occurrence when the trial judge conducted the hearing on punitive damages. The trial judge requested a financial statement from Kay at the first hearing with respect to punitive damages. In response, *Kay produced a statement of financial condition showing his net worth to be $690,300.* In his supplemental post-trial memorandum on punitive damages, however, *Yackel produced a financial statement Kay had submitted to American National Bank on March 18, 1992 which showed Kay's net worth to be $3,333,-500.* Kay's net worth was calculated in the statement by subtracting his total liabilities of $666,500 from Kay's total assets of $4,000,000.

■ Appellant finally alleges the trial court's punitive damages award of $100,000 was excessive since the jury awarded only $18,600 in compensatory damages to Yackel for wrongful discharge. Kay argues the award of punitive damages was over five times the amount of the compensatory damages awarded. Appellant's analysis is flawed. The compensatory damages included the $194,000 for breach of fiduciary duty and the $18,600 for wrongful discharge, which amounted to a total of $212,600. Thus, the amount of punitive damages was not more than five times greater than the maximum amount of compensatory damages. In addition, standing alone, a large disparity between compensatory and punitive damages is insufficient to justify an appellate court's interference with a decision that is within the province of the trier of fact. *Villella v. Waikem*

*Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464; *Uebelacker v. Cincom Systems, Inc.* (1992), 80 Ohio App.3d 97, 608 N.E.2d 858.

Kay's final assignment of error is, therefore, not well taken and is overruled.

*Judgment affirmed.*

MATIA and NUGENT, JJ., concur.