BANK ONE, STEUBENVILLE, NA, Appellee,

v.

BUCKEYE UNION INSURANCE COMPANY, Appellant.

[Cite as *Bank One, Steubenville, NA v. Buckeye Union Ins. Co.* (1996), 114 Ohio App.3d 248.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 95–JE–29.

Decided Sept. 25, 1996.

*Dominic J. Bianco* and *Anthony P. Picadio*, for appellee.

*Alan S. Sims* and *Michael J. Russo*, for appellant.

Cox, Judge.

This matter presents a timely appeal from a decision rendered by the Jefferson County Common Pleas Court, granting judgment in favor of plaintiff-appellee, Bank One, Steubenville, NA.

Appellee is a national banking association authorized to do business in the state of Ohio. In April 1983, Heritage Bancorp, Inc., by merger, became a wholly owned subsidiary of Bank One Corporation under the title of Bank One of Eastern Ohio, NA. By purchase effective September 1, 1987, appellee became a successor in interest to Bank One of Eastern Ohio, NA. Defendant-appellant, Buckeye Union Insurance Company, had issued to appellee's predecessor, Heritage Bancorp, Inc., a banker's blanket bond upon which appellee subsequently

made a claim for repayment of certain sums expended as a result of the following factual situation.

This case involves the relationship between an entity known as O'Mara Enterprises, Inc. ("O'Mara") and a sole proprietorship known as the Gail Smith Development Company ("GSD"). O'Mara operated certain fast food restaurants in Ohio, West Virginia and Pennsylvania and was owned by Timothy J. O'Mara, W. Gail Smith, Terry Thompson and Rodger Morgan. GSD managed O'Mara's office, accounting, and financial affairs.

Terry Thompson, the individual in charge of GSD, was also the person who was principally responsible for making the day-to-day decisions involving O'Mara's management, including the payment of bills, federal withholding taxes, payroll obligations, and preparation of monthly financial statements showing O'Mara's current financial condition. During 1979 and 1980, Timothy J. O'Mara was the president of O'Mara Enterprises, Inc. and was the person authorized to sign checks on all of O'Mara's checking accounts. In order to facilitate the payment by check of O'Mara's monthly obligations, Mr. O'Mara entrusted his facsimile signature stamp to Terry Thompson. Thompson thereafter had general authority to use the stamp to sign checks drawn on accounts maintained by O'Mara, including checks written on O'Mara's accounts for payment of federal payroll taxes.

It was from the time period of approximately November 1979 through August 1980, that Thompson, without express or implied authority, diverted in excess of $400,000 worth of O'Mara checks earmarked for the payment of federal payroll taxes into an account owned by GSD. With a federal tax deposit computer punch card, checks were drawn on various O'Mara checking accounts made payable to Heritage Bank for the federal payroll tax deposit utilizing Mr. O'Mara's facsimile signature stamp to sign the checks. The reverse sides of the checks were then stamped with the following instruction: "Pay to the order of First National Bank & Trust Company in Steubenville, Ohio, FOR DEPOSIT ONLY, GAIL SMITH DEVELOPMENT # 009–9215."

Thereafter, the checks were taken to Heritage Bank, deposited into a GSD account and, rather than being used to pay the O'Mara federal tax liabilities, the checks were used to pay the personal expenses of W. Gail Smith and to pay obligations of other Smith-related companies. It was not until August 1980 that Mr. O'Mara was notified by the Internal Revenue Service that there was an arrearage of approximately $502,000 in his federal payroll tax obligation. Mr. O'Mara subsequently discovered the misappropriation of his funds on thirty-seven separate occasions by Thompson and Smith.

Mr. O'Mara initiated litigation in Pennsylvania and West Virginia against the banks upon which the tax checks had been written and, in Ohio, against appellee's

predecessor, Heritage Bank. Heritage Bank was also joined as a party in the litigation pending in West Virginia and Pennsylvania. In October 1984, Heritage Bank settled an additional pending claim with regard to this matter for the sum of $4,000. On or about March 17, 1985, Heritage Bank settled the Pennsylvania litigation by paying the sum of $21,184.62 to O'Mara. O'Mara thereafter prevailed in the West Virginia and Ohio suits against Heritage Bank, which were both ultimately resolved when Heritage Bank paid the sum of $619,400 to O'Mara.

Appellee then filed an action for declaratory judgment and for compensatory and punitive judgment against appellant on September 24, 1991, seeking reimbursement pursuant to the insurance bond which appellant had issued, for the aforementioned sums paid by Heritage Bank. Appellant filed an answer and counterclaim on December 30, 1991, and this matter proceeded to trial before the court. At the conclusion of appellee's case-in-chief and at the conclusion of the presentation of all evidence, appellant made motions for an involuntary dismissal pursuant to Civ.R. 41(B)(2), both of which the trial court overruled. After the trial, appellee filed its post-trial brief, along with its proposed findings of fact and conclusions of law. On June 13, 1995, appellant filed its response, along with its own brief and proposed findings of fact and conclusions of law.

On August 30, 1995, the trial court filed its decision and final order, including findings of fact and conclusions of law, determining that appellee was entitled to recover from appellant the sums of $4,000, $21,184.62 and $619,400, along with interest at the rate of ten percent per annum, less the $25,000 deductible under the applicable banker's blanket bond. It is from this decision that appellant appeals.

Appellant sets forth seven assignments of error on appeal.

Appellant's first assignment of error states:

"The trial court erred in overruling defendant-appellant's motion for involuntary dismissal at the conclusion of the presentation of evidence by plaintiff-appellee because there was no coverage under the banker's blanket bond for the loss suffered by plaintiff-appellee."

Appellant contends that appellee failed to prove, by a preponderance of the evidence, that the loss which it suffered was covered under the banker's blanket bond issued by appellant and was not simply the result of poor business practice. Appellant cites Civ.R. 41(B)(2) and *Speer v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 276, 624 N.E.2d 251, for the proposition that after a plaintiff has completed the presentation of his case, a trial court is permitted to weigh the evidence, resolve any conflicts, and render judgment in favor of the defendant.

The trial court overruled appellant's motion for involuntary dismissal, ultimately finding that appellee was entitled to judgment against appellant under sections (B) and (D) of the banker's blanket bond. Section (D)(1) of that insuring agreement provides:

"(D) Loss resulting directly from

"(1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, withdrawal order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit."

Appellant points out that pursuant to Section 1(h) in the insuring agreement, forgery is defined as being "the signing of the name of another with intent to deceive" and does not include "the signing of one's own name with or without authority, in any capacity, for any purpose." Appellant maintains that the loss suffered by appellee was not one which could arguably fall within the insuring agreement, as Thompson's actions did not constitute forgery pursuant to that definition.

The evidence presented in the case at bar clearly established that Thompson signed the name of another without authority. He was entrusted with Mr. O'Mara's facsimile signature stamp and was authorized to use it to sign checks payable to Heritage Bank for the purpose of paying O'Mara's federal payroll taxes. He was not authorized to use the signature stamp to sign Mr. O'Mara's name on checks made payable to Heritage Bank which were used to transfer funds from O'Mara Enterprises, Inc. to the Gail Smith Development Company.

The trial court properly determined that Thompson signed Mr. O'Mara's name with the intent to deceive, which constitutes forgery as defined in the banker's blanket bond. The placement of the restrictive stamp on the reverse side of the checks by Thompson's wife likewise evidenced the fact that she had signed the name of another without authority, thereby constituting forgery as defined in the banker's blanket bond.

Appellant's first assignment of error is found to be without merit.

■ Appellant's second assignment of error states:

"The trial court erred in overruling defendant-appellant's motion for involuntary dismissal at the conclusion of the presentation of all evidence because there was no coverage under the banker's blanket bond for the loss suffered by plaintiff-appellee or, alternatively, the loss suffered by plaintiff-appellee was excluded from coverage under the banker's blanket bond."

Appellant reiterates its arguments as set forth under the first assignment of error and further contends that involuntary dismissal was further warranted in this matter, as it established, by a preponderance of the evidence, that the loss

suffered by appellee was excluded from coverage under the insuring agreement. Appellant argues that Exclusions Section 2(h) of the banker's blanket bond precludes coverage because the loss in question was caused by appellee's employee. Alternatively, appellant claims that Exclusions Section 2(n) of the banker's blanket bond precludes coverage for losses arising from erroneous credits unless withdrawals from the account erroneously credited occur while the depositor whose deposit was the subject of the erroneous credit is still present in the bank office where the deposit was made.

Appellant asserts that appellee's predecessor, Heritage Bank, acted in a commercially unreasonable manner by making no inquiry to determine if payment to GSD was what O'Mara actually desired. See *Master Chem. Corp. v. Inkrott* (1990), 55 Ohio St.3d 23, 563 N.E.2d 26. Appellant states that appellee's predecessor could have prevented the loss suffered by O'Mara, for which it became liable, by refusing to accept for deposit the checks presented, as they were irregular on their face.

After examining the insuring agreement, we find that the trial court properly held that Exclusions Section 2(h) did not bar appellee's claim, as the loss in question was not caused by any bank employee. When construing an exclusion in an insurance policy, a court as a matter of law must adopt any reasonable interpretation which would preserve coverage for the insured. *Lester v. State Farm Mut. Auto. Ins. Co.* (1989), 64 Ohio App.3d 52, 580 N.E.2d 793.

We further find the trial court correctly concluded that appellee's claim was not barred by Exclusions Section 2(n), as the claim did not arise from erroneous credits. Every deposit made by Thompson was made in strict accordance with his instructions and in the correct amount. No bank teller committed any error, either in the amount credited for any of the deposits in question or in the account to which they were credited. The deposits may have been unauthorized, but they were not erroneous.

Appellant's second assignment of error is found to be without merit.

Appellant's third assignment of error alleges:

"The trial court erred in granting judgment in favor of plaintiff-appellee because such judgment was against the manifest weight of the evidence."

Appellant alleges that the trial court improperly determined that Thompson and his wife acted with intent to deceive, thereby constituting forgery as defined by the insuring agreement and therefore believes that the decision was manifestly contrary to the natural and reasonable inferences to be drawn from the evidence presented.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being

against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

The trial court considered extensive testimony and numerous exhibits and set forth detailed findings of fact. The trial court relied upon competent, credible evidence in reaching its decision, and it was not against the manifest weight of the evidence.

Appellant's third assignment of error is found to be without merit.

Appellant's fourth and fifth assignments of error are similar in nature, will therefore be discussed together, and allege as follows:

"The trial court erred in failing to take judicial notice of adjudicated facts when requested by defendant-appellant to do so and when supplied with the necessary information, which was an abuse of discretion and caused substantial prejudice to defendant-appellant."

"The trial court erred in failing to take judicial notice of its prior decision of law when requested by defendant-appellant to do so, which was an abuse of discretion and caused substantial prejudice to defendant-appellant."

Appellant points out that it asked the trial court to take judicial notice of adjudicative facts from a prior case determined by that court involving appellee and that it supplied the trial court with the necessary information. Appellant cites Evid.R. 201(D), which provides that a trial court shall take judicial notice if requested by a party to do so and if properly supplied with the necessary information. Appellant believes it is clear from the trial court's decision that it did not take judicial notice as requested and thereby caused substantial prejudice to appellant.

Appellant further states that even though it was not a party to the prior proceeding, the trial court should have applied the doctrine of *res judicata* in this matter, as appellee had a fair opportunity to fully litigate the same issues presented herein in the prior proceeding. Appellant cites *McCrory v. Children's Hosp.* (1986), 28 Ohio App.3d 49, 28 OBR 61, 501 N.E.2d 1238, in support of this proposition.

The Ohio Supreme Court in *Tracy v. Merrell–Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 569 N.E.2d 875, held:

"Abuse of discretion connotes more than an error of law or judgment; it implies that the [trial] court's attitude is unreasonable, arbitrary or unconscionable."

The trial court was fully aware of the prior litigation to which appellant refers, and all parties hereto agreed that the trial court could take judicial notice of it. The record does not indicate that the trial court refused to take judicial notice of

the prior proceeding. The trial court clearly considered the entire record, including the decision which it rendered in the prior proceeding, before issuing its ruling.

With regard to appellant's claim that the trial court should have applied the doctrine of *res judicata,* appellant concedes that it was not a party to the prior proceeding. Additionally, not every issue in the prior proceeding was identical to the issues presented in this case. Where the issues were similar in nature, the trial court made findings in the case at bar which were consistent. Therefore, the trial court did not err or abuse its discretion in failing to apply the doctrine of *res judicata.*

There is no basis in the record to support appellant's claim that the trial court failed to take judicial notice after being requested to do so, and appellant has failed to show that the trial court abused its discretion in this matter.

Appellant's fourth and fifth assignments of error are found to be without merit.

Appellant's sixth assignment of error alleges:

"The trial court erred in its application of the deductible provision of the banker's blanket bond."

The trial court awarded judgment in favor of appellee as follows:

"(a) $4,000.00 with interest at the rate of 10% per annum, compounded yearly, from October 3, 1984;

"(b) $21,184.62 with interest at the rate of 10% per annum, compounded yearly, from March 17, 1985; and

"(c) $619,400.00 with interest at the ate [*sic*] of 10% per annum, compounded yearly, from December 29, 1992.

"less the $25,000 deductible * * *."

Section 11 of the banker's blanket bond provides, in part:

"The Underwriter shall be liable hereunder only for the amount by which any loss exceeds the Deductible Amount for the Insuring Agreement or Coverage applicable to such loss, subject to the Limit of Liability for such Agreement or Coverage."

Appellant argues that rather than applying the deductible amount to sums which appellee paid in 1984 and 1985, the trial court deducted the $25,000 deductible amount from the total judgment award, plus interest thereon accruing from 1984 forward.

Appellee responds by citing *Yackel v. Kay* (1994), 95 Ohio App.3d 472, 642 N.E.2d 1107, for the proposition that an appellate court need not consider issues which an appellant failed to raise in the trial court. Appellee states that since

appellant failed to raise the issue which it sets forth under this assignment of error in the trial court, it cannot raise it now. Appellee additionally maintains that the trial court properly applied the deductible amount in the manner prescribed in appellant's insuring agreement.

Appellee's reliance on *Yackel* is misplaced, as that case involved the failure of an appellant to address the calculation of damages in both its proposed jury instructions and jury interrogatories and therefore has no relevance to the bench trial in the case at bar. No error arose herein until the trial court entered judgment in favor of appellee on August 30, 1995 and incorrectly applied the deductible provision by subtracting $25,000 from the sum total of appellee's loss instead of applying it to the first $25,000 of loss and awarding judgment, along with interest, upon the amount in excess of $25,000, as required by the terms and conditions of appellant's insuring agreement. The trial court committed plain error with regard to this issue.

Appellant's sixth assignment of error is found to be with merit.

▮ Appellant's seventh assignment of error alleges:

"The trial court erred in awarding plaintiff-appellee judgment in various amounts with interest on said amounts at the rate of ten percent per annum, compounded yearly, i.e. compounded interest."

Appellant maintains that the trial court's award of interest on three separate amounts at the rate of ten percent per annum, compounded yearly, had the effect of adding unpaid interest onto the principal amount prior to computing the interest for the next year based upon the new sum, which is contrary to Ohio law. R.C. 1343.03(A) provides:

"[T]he creditor is entitled to interest at the rate of ten percent per annum, and no more, unless a written contract provides a different rate of interest * * *."

In the absence of a specific agreement or statutory provision permitting the compounding of interest, simple interest is to be awarded and computed upon the original principal amount. *Viock v. Stowe–Woodward Co.* (1989), 59 Ohio App.3d 3, 569 N.E.2d 1070. In the case at bar, appellee presented no evidence at trial as to how damages should be calculated, and there was no specific agreement for compound interest or a statutory provision authorizing it. Appellee's argument that appellant failed to raise an objection before the trial court with regard to this issue is not persuasive for the same reasons as we set forth in the previous assignment of error. The trial court committed plain error in awarding compounded interest.

Appellant's seventh assignment of error has merit.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment accordingly.*

GENE DONOFRIO, J., concurs.

O'NEILL, P.J., dissents.

O'NEILL, Presiding Judge, dissenting.

I respectfully dissent from the opinion and judgment entry rendered by the majority.

In its disposition of the second assignment of error, the majority states that the trial court properly held that the loss in question was not caused by any bank employee. The trial court took judicial notice of a prior case involving the same issue, *O'Mara Enterprises, Inc. v. Heritage Bank* (Aug. 13, 1992), Jefferson App. No. 91–J–6, unreported, 1992 WL 198078. In that case, the trial court found as follows:

"The Defendant Banks originally argued that they had express authority under Heritage Bank's exculpatory corporation resolution form to deposit these checks into the GSD (Gail Smith Develop[ment]) account. Under the principles set forth in *Master Chemical, supra,* and under the undisputed facts in this case, the bank's reliance upon the exculpatory resolution, its failure to make any inquiry, and its treating the checks as bearer paper were commercially unjustifiable. As a matter of law no express authority existed for the Defendant to pay the checks to GSD."

That case was appealed to this court and was affirmed in part and reversed in part, and that conclusion of the trial judge was affirmed by this court.

It would seem to me that the bank could act commercially unjustifiably only through its employees. The bank's reliance upon the exculpatory resolution had to have been made by some employee. The bank's failure to make any inquiry and its treating the checks as bearer paper certainly had to be decided by some employee.

It is my conclusion that Exclusion Section 2(h) applies, precluding coverage because the loss in question was caused by appellee's employees.