Rose FENDELMAN, Administratrix of the
Estate of Erwin Fendelman, Deceased,
et al., Plaintiffs-Appellants,

v.

FENCO HANDBAG MANUFACTURING
CO., Inc., a Corporation, et al., De-
fendants-Respondents.

No. 55282.

Supreme Court of Missouri,
Division No. 2.

July 17, 1972.

Thompson, Walther & Shewmaker, Bernard N. Frank, Paul M. Fletcher, St. Louis, for appellants.

Susman, Stern, Agatstein & Heifetz, Sylvan Agatstein, St. Louis, for respondents.

HENLEY, Judge.

This is a suit in equity to recover for the benefit of a corporation alleged excessive compensation paid to its officers, who, as directors of the corporation, determined and fixed their own compensation. Plaintiffs appeal from a decree in favor of the individual defendants.

The Fenco Handbag Manufacturing Company (hereinafter Fenco), nominal defendant, was organized as a corporation in February, 1961, by Erwin Fendelman, Ann Wittner Lazaroff, Meyer Lazaroff and Norman Rosenblum. Its business is the manufacture of women's handbags for sale at wholesale. Plaintiff Rose Fendelman is the widow-administratrix of the estate and plaintiff Maxine Levin is the daughter of Erwin Fendelman who died at the age of 74 on January 1, 1968, leaving them as his sole heirs. They own approximately 22% of the outstanding shares of stock of Fenco. The individual defendants (hereinafter defendants) are Ann Wittner Lazaroff, sister of the deceased, Erwin Fendelman; Meyer Lazaroff, husband of Ann; Howard A. Wittner, son of Ann; Barbara Rosenblum, daughter of Ann; and Norman Rosenblum, husband of Barbara and son-in-law of Ann. They own the remainder of the stock of Fenco and since April 1, 1963, have been the only members of its board of directors. Erwin Fendelman was the first president of Fenco. He was a member of its board of directors until April, 1963. In February, 1963, he was injured in an automobile accident; in March he was not reelected to the board of directors. Defendants were elected directors for the fiscal year 1964.[1] At the March, 1963, meeting the board elected Ann Lazaroff to succeed Erwin Fendelman as president of the company. At that meeting Erwin Fendelman was elected assistant treasurer, and continued in that post until his death, but he performed no duties as such. He continued to work for the corporation as a lining cutter, employment he began with it in February, 1961.

As indicated, Fenco is a close corporation; it began business and was operated more or less as a family organization.

The substance of the allegations of plaintiffs' petition is that for and during the six fiscal years 1964 through 1969,[2] defendants, as directors and officers of Fenco, in violation of their fiduciary obligations as such to the corporation and its shareholders, authorized the payment and paid to themselves salaries and bonuses grossly in excess of the reasonable value of their services to the damage of the corporation.[3] By their answer, defendants denied that the compensation paid them

1. The fiscal year of the corporation was from April 1 to the following March 31. Reference to fiscal year 1964 means the year beginning April 1, 1963, and ending March 31, 1964. Further reference to fiscal year means the 12 months ending March 31 of the year mentioned.

2. Plaintiffs do not complain of compensation paid prior to fiscal year 1964.

3. The amount of the alleged excess is not pleaded. Plaintiffs state in their brief that the proof shows that the salaries of Norman Rosenblum, Ann Lazaroff, Meyer Lazaroff and Howard Wittner were excesssive in the aggregate amount of $242,-427. They abandon their claim that excessive compensation was paid to Barbara Rosenblum. The evidence shows that the aggregate compensation paid by Fenco to Norman Rosenblum, Ann Lazaroff and Meyer Lazaroff during the six years involved and to Howard Wittner during four of those six years was $632,628. There is evidence from plaintiffs that the aggregate maximum reasonable compensation for these four defendants during this period would have been $401,406, a difference of $231,222, which may be said to be the minimum amount in dispute when this appeal was lodged in this court in December, 1969.

was excessive, but alleged that if it was, plaintiffs, standing in the shoes of the deceased Fendelman, are estopped and barred by laches from maintaining this suit, because Erwin Fendelman knowingly acquiesced in and consented to the fixing of the compensation paid defendants, and, in fact, participated in the plan of compensation fixed by defendants in that he accepted salaries and other benefits in excess of the reasonable value of his services as lining cutter, a mere manual laborer.

The court made extensive findings of fact and conclusions of law and, as indicated, entered a decree in favor of defendants. In general, the court found and concluded (1) that the compensation paid the defendants was not excessive, but was fair and reasonable; that it was " * * * not so disproportionate to the value of services performed as to be actionable on behalf of the corporation * * * "; (2) that Erwin Fendelman did not complain but acquiesced in the compensation paid to the officers and acquiesced in the management of the corporation by Norman Rosenblum; (3) that he (Fendelman) was paid compensation in excess of the reasonable value of his services and, therefore, he and his successors were estopped from complaining; (4) that "[a]ny laches of Fendelman or estoppel * * * would not, standing alone as a matter of equity be sufficient to bar plaintiffs' remedy, if defendants were chargeable with fraud, misconduct, or other oppressive acts."

On this appeal we review the case de novo, weigh the evidence and determine on the whole record the relief, if any, to which plaintiffs are entitled. In making our determination of the facts from conflicting testimony, we give due regard to the opportunity of the chancellor to judge of the credibility of the witnesses and defer to his findings of the facts unless from examination of the record we are compelled to conclude that his findings are clearly erroneous. Ramacciotti v. Joe Simpkins, Inc., Mo., 427 S.W.2d 425, 426, 433 [2, 4, 11].

Plaintiffs assert that the evidence shows that defendants, as the board of directors of the corporation, set salaries and bonuses paid to themselves as officers of the corporation. They contend that in these circumstances the burden is upon the defendants to justify their salaries and bonuses and show the reasonableness thereof; that the evidence shows that defendants failed to meet this burden and, therefore, the court erred in entering judgment for defendants. Plaintiffs further assert that the evidence shows that compensation paid defendants was excessive in the aggregate sum of $242,427 and that judgment in that amount should be awarded to plaintiffs for the benefit of Fenco.

The parties agree that defendants, as directors, set the salaries and bonuses paid to themselves each year as officers of the corporation. They are also in agreement that the law is that "In suits by stockholders to recover for the corporation, salaries claimed to be excessive and paid to officers, who are also directors, and these officer directors have set their own salaries, or whose votes were necessary to set their own salaries, the burden is upon the director officers to justify their salaries and show the reasonableness thereof." Binz v. St. Louis Hide and Tallow Company, Mo. App., 378 S.W.2d 228, 230 [1]; Ruetz v. Topping, Mo.App., 453 S.W.2d 624, 627 [2]; Ramacciotti v. Joe Simpkins, Inc., supra, 427 S.W.2d at 432; 5 Fletcher, Private Corporations, pp. 561–562, § 2129 and p. 581, § 2133. Their primary disagreement is in whether or not defendants met their burden. Defendants claim that they did, and the trial chancellor so found. Plaintiffs, as indicated, claim that defendants failed to meet their burden.

The parties agree that the total compensation (salary and bonus) paid by Fenco to

each defendant, except Barbara Rosenblum, each year was as follows:

### 1. Norman Rosenblum
Year ending March 31:

1969—$39,796 (salary $39,796; bonus, none)
1968—$41,977 (salary $41,977; bonus, none)
1967—$86,977 (salary $41,977; bonus, $45,000)
1966—$49,977 (salary $41,977; bonus, $8,000)
1965—$54,988 (salary $41,488; bonus, $13,500)
1964—$54,000 (salary $41,000; bonus, $13,000)
1963—$25,000 (salary $13,000; bonus, $12,000)
1962—$8,255 (compensation for part of year)

### 2. Ann Lazaroff
Year ending March 31:

1969—$15,058 (salary $15,058; bonus, none)
1968—$15,577 (salary $15,577; bonus, none)
1967—$26,577 (salary $15,577; bonus, $11,000)
1966—$24,577 (salary $15,577; bonus, $9,000)
1965—$27,788 (salary $15,288; bonus, $12,500)
1964—$26,000 (salary $15,000; bonus, $11,000)
1963—$12,000 (salary $ 7,800; bonus, $4,200)

### 3. Meyer Lazaroff
Year ending March 31:

1969—$14,962 (salary $14,962; bonus, none)
1968—$14,538 (salary $14,538; bonus, none)
1967—$16,538 (salary $14,538; bonus, $2,000)
1966—$16,538 (salary $14,538; bonus, $2,000)
1965—$17,269 (salary $14,269; bonus, $3,000)
1964—$16,000 (salary $14,000; bonus, $2,000)
1963—$12,000 (salary $ 7,800; bonus, $4,200)
1962—$ 4,200 (compensation for part of year)

### 4. Howard Wittner
Year ending March 31:

1969—$27,681 (salary $27,681; bonus, none)
1968—$ 8,235 (salary $ 8,235; bonus, none)
1967—$19,235 (salary $ 8,235; bonus, $11,000)
1966—$18,340 (salary $ 6,340; bonus, $12,000)

The parties agree also that the following is a resumé of the sales, profits (or loss) and total compensation paid by Fenco to the defendants, except Barbara Rosenblum, for each of the years shown:

| Year Ended | Net Sales | Profit (or Loss) Before Respondents' Compensation | Total Compensation of all Respondents | Profit (or Loss) Before Taxes |
|---|---|---|---|---|
| 1969 | $2,139,975 | $120,823 | $ 97,497 | $ 20,063 |
| 1968 | 1,098,420 | 72,346 | 80,327 | ($11,307) |
| 1967 | 1,867,463 | 185,835 | 149,327 | 33,880 |
| 1966 | 1,670,795 | 142,055 | 109,432 | 32,623 |
| 1965 | 1,603,491 | 206,321 | 100,045 | 106,276 |
| 1964 | 1,265,902 | 127,805 | 96,000 | 31,805 |
| 1963 | 997,848 | 84,056 | 49,000 | 35,056 |
| 1962 | 409,783 | 32,376 | 12,455 | 19,921 |

They agree too that no dividends have been paid to the stockholders.

What is the test by which the reasonableness of the compensation of corporate officers is to be measured? This question was presented to the St. Louis Court of Appeals in 1970 in Ruetz v. Topping, 453 S.W.2d 624, a case involving a close corporation. That court speaking through Doerner, C., said at 1. c. 628–629:

"It is said that, like the reasonableness of an attorney's fee, the reasonableness of the compensation paid to an employee is a question of fact. Black v. Parker Mfg. Co., 329 Mass. 105, 106 N.E.2d 544; Smith v. Dunlap, 269 Ala. 97, 111 So.2d 1; Pacific Grains, Inc. v. Commissioner [of Internal Revenue], 9 Cir., 399 F.2d 603. Ordinarily, like an attorney's fee, it is not sub-

ject to a precise determination by any known mathematical formula; there is no hard and fast rule to be used in deciding what is reasonable in all cases and each must be decided on its own facts and circumstances. Unlike the determination of a reasonable attorney's fee, where the elements which may properly be considered are specified in our Civil Rule 4.12, V.A. M.R., no authority has been found which undertakes to give an all-inclusive statement of the factors which may properly be used in arriving at a conclusion as to the reasonableness of an employee's compensation.

"This is not to say that we are wholly without some guidelines, for the question of what is reasonable compensation, especially at the executive level, has received attention from both the text writers and

the courts. Fletcher, in his Cyclopedia Corporations, Vol. 5, Section 2133, p. 577, quotes from a New York case that:

" ' "To come within the rule of reason the compensation must be in proportion to the executive's ability, services and time devoted to the company, difficulties involved, responsibilities assumed, success achieved, amounts under jurisdiction, corporate earnings, profits and prosperity, increase in volume or quality of business or both, and all other relevant facts and circumstances." '

"Section 162(a) (1) of the Internal Revenue Code, 1954, allows a corporation to deduct as an ordinary and necessary expense in carrying on a business 'a reasonable allowance for salaries or other compensation for personal services actually rendered,' and that provision has proven to be a more prolific source of litigation as to what was or was not reasonable compensation. In that area, also, no set formula has been devised, and as in Mayson Mfg. Co. v. Commissioner [of Internal Revenue], 6 Cir., 178 F.2d 115, various factors to be considered are mentioned: the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; a comparison of salaries with distribuion to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years."

Defendants assert in argument that the following demonstrates that they have met their burden of justifying and showing the reasonableness of their salaries and bonuses.

1. "[T]hat through the sole efforts of Rosenblum, the volume of Fenco's business increased five-fold over its volume during the initial year of operation * * * that without him no such business results could have been achieved."

2. That "[t]aking into * * * consideration that had he [Rosenblum] been compensated only for his sales efforts, disregarding his other duties, he would have been entitled to commissions of 10% of the sales he procured * * *. Had he been compensated upon that basis in a year in which the sales were approximately $1,500,000, 10% of $750,000, the sales attributable solely to him, would have amounted to $75,000 * * *."

3. That Joel Massie, Fenco's accountant, who advised with the officers and directors on financial matters and assisted them in determining the amount of salaries and bonuses to be paid, said " * * * that he took into consideration, among other things, that had the sales been conducted by someone other than Rosenblum, the usual commission rate would have been required to be paid * * * and that rate, he said, was normally between 7% and 10%."

4. "That * * * in small [close] corporations working with limited capital [such as Fenco], the minimizing of taxable corporate income is a proper consideration in determining salaries and bonuses. * * * [T]hat profits could justifiably be devoted to the payment of bonuses when these bonuses [are] loaned back to the company, thus making available additional [short term] operating capital * * *," a part of which would not have been available for company use had it been paid out in income taxes.

5. That "[a]fter the payment of salaries and bonuses, unusually high returns on capital were realized, resulting in an increase in corporate net worth from $8,000 in * * * [1962] to almost $200,000 in * * * 1969. * * * that the return on capital after the payment of salaries was unusually high * * *; that [for example] in * * * 1964 * * * [it] was over 100%."

6. That " * * * the payment of * * * [these] salaries and bonuses in no way impaired the company * * *," that Fenco " * * * appears to be well organized and properly managed * * *," and has grown " * * * in a relatively short time 'to a very nice size.' "

7. That both Massie and Louis Weltman, another certified public accountant, testified that based on the above factors " * * * the salaries and bonuses were justified."

There is evidence which would support the above conclusions drawn by defendants. However, we find that the evidence from which those conclusions may be drawn is for the most part applicable only to the salaries and bonuses paid to Norman Rosenblum and, somewhat to a lesser degree, to Ann Lazaroff. These two obviously were the "brains" and "driving force" behind the rapid growth of Fenco's business from a little over $400,000 in 1962 to more than five times that amount in eight years. It was Rosenblum and Mrs. Lazaroff who had the experience and "know-how" in the handbag manufacturing business necessary to build a potentially successful company. Both came to Fenco from Smart Handbag Company; Rosenblum, a young man in his early thirties, with eleven years' experience in the sale of handbags at wholesale; and Mrs. Lazaroff, who had been " * * * raised in this business * * * *", with years of experience as vice-president of Smart Handbag. Mr. Rosenblum's compensation at Smart Handbag for 1961 was $25,000; Mrs. Lazaroff's was $15,600.

■ Rosenblum was vice-president of Fenco. He did all the selling, bought all the leather and frames, and handled the styling and customer relations. There were two methods of sale: (1) sales through the salesmen of shoe manufacturing companies to retailers, and (2) sales directly to retailers. The total sales volume was about evenly divided between the two methods. It was through Rosenblum that arrangements were made for the handling of sales by the salesmen of shoe manufacturing companies. He also was responsible for design of the bags to coordinate in style with the shoes manufactured by the shoe companies. In addition he made all of the direct sales to retailers. If he were paid a 10% commission on the direct sales alone (one-half of the total), his compensation each year would have been more than he actually received. We hold that, under the facts of this case, sales made by this corporate executive and reasonable commission on those sales may be considered as a factor in determining whether the total compensation paid him is justified and reasonable. See Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593.

We are of the opinion, and hold, that considering this factor and the factors discussed in Ruetz v. Topping, supra, defendants have sustained their burden of showing that the compensation paid to Norman Rosenblum was reasonable. We also hold that they have sustained their burden of showing that the compensation paid to Mrs. Lazaroff was reasonable.

■ Mrs. Lazaroff's salary as vice-president of Smart Handbag Company for the year before she joined Fenco was $15,600. In her first year with Fenco she took a reduction in compensation of $3,600. Furthermore, contrary to the inflationary trend in the economy during the years 1963 through 1969, her total compensation for each of the last two of those years was less than her salary at Smart Handbag in 1961. She has been president of Fenco since the beginning of fiscal year 1964, the year after she joined the company. Her total compensation for her first year as president was increased to $26,000 and it remained at substantially that same amount for the following three years. She apparently was no mere figurehead as president. Her responsibilities as such officer included the day to day direction, supervision and management of all aspects of the busi-

ness, except sales, but including production, records, shipping, collections and some purchasing. Like the other defendants and the production, shipping and receiving employees, her day began at 6:30 a. m. and, on occasion, it ended when the night shift quit at 10:00 p. m. There is no evidence to show what would be reasonable compensation for such an officer in a comparable company for the four years when her total compensation was in the neighborhood of $26,000 per year. However, in view of the fact that her duties and responsibilities as president of this new company were greater than those she had as vice-president of Smart Handbag, and in view of the fact that her compensation for the first year and the last two years at Fenco was less than her salary for her last year at Smart Handbag, we conclude, and hold, that the total compensation paid her for all years was not unreasonable.

As indicated, practically all of the evidence referred to by defendants as demonstrating that they have met their burden of showing reasonableness of salaries and bonuses is applicable primarily to Norman Rosenblum and Ann Lazaroff; very little is applicable to Meyer Lazaroff or Howard Wittner.

■ Meyer Lazaroff's duties were not those of an executive; his responsibilities may be described as merely those of a head shipping clerk. He "received the handbags when they were ready for delivery and he would fill the orders. * * * He compared the bills of lading with the invoices and determined the manner in which they would be shipped and selected the carrier * * * [and] took care of insurance claims for losses." Howard Wittner is a member of the Missouri Bar. He is a member of the board of directors and secretary of Fenco. Apparently he was engaged in the general practice of law from his admission to the bar in 1960 until 1966 when he joined Fenco and Annette Hand-

bag Company.[4] In 1964 and 1965 the law firm by which he was employed was paid $10,385 and $15,200, respectively, by Fenco, all of which went to Mr. Wittner. In 1966, 1967 and 1968, he divided his time between these two companies, handling all of the sales of Annette. He handled all of the legal matters of Fenco, including arrangements for financing by factoring accounts receivable. He negotiated, prepared and handled its leases and labor contracts. He handled its differences with suppliers and labor grievances, including one strike, and tried such cases as it had before the National Labor Relations Board. No effort has been made by defendants to show a comparison of the compensation paid to Meyer Lazaroff or Howard Wittner with compensation paid to a like employee or executive having similar duties in comparable companies. Like that in Ruetz v. Topping, supra, this failure on defendants' part is a fundamental weakness in their case. We find, and hold, that the findings and conclusions of the trial judge as to these two defendants are clearly erroneous; that defendants failed to sustain their burden of showing that the compensation paid them was reasonable and justified.

Plaintiffs request that we determine from this record the amount of excessive compensation paid defendants and direct the entry of judgment for that amount. We do not believe that the evidence presented by this record relative to Meyer Lazaroff or Howard Wittner is of sufficient substance and clarity to support a finding of (1) the amount of compensation which would be reasonable for their services, and (2) the amount of the excess, if any. There is evidence that Meyer Lazaroff's income in previous unrelated employment was $7,800 to $10,400 per year. Plaintiffs' expert witness testified that reasonable compensation for him would range from $7,800 to $12,000 per year. Plaintiffs' expert witness also testified that rea-

---

4. A company owned by himself, his mother, Ann Lazaroff, and his sister, Barbara Rosenblum, which was merged into Fenco in 1969.

**468**

sonable compensation for Howard Wittner for his services to both Fenco and Annette Handbag would range from $16,000 to $27,000 per year. However, this witness would not express an opinion as to how much of this should be paid by each company. Plaintiffs argue, without evidentiary support, that $300 per month should be sufficient for the legal services of Mr. Wittner for the fiscal years 1962 through 1968. In this state of the record we are certainly in no position to direct the entry of a judgment for plaintiffs for an amount certain.

Having found that defendants failed to sustain their burden of proof that the compensation paid Meyer Lazaroff and Howard Wittner was reasonable, it now becomes necessary that we consider whether the late Erwin Fendelman acquiesced in and agreed to the compensation paid them and, if so, whether plaintiffs are thereby estopped from recovering the alleged excess. Plaintiffs contend in their second point that the court erred in finding that Mr. Fendelman acquiesced in and agreed to the compensation paid all individual defendants. However, it is necessary that we consider this point only in connection with the compensation paid these two defendants, because, as to the others, we have found that defendants sustained their burden.

█ Plaintiffs limit their claim and complain only that excessive compensation was paid beginning with the commencement of fiscal year 1964 on April 1, 1963, the date Mr. Fendelman became a mere employee and inactive assistant treasurer. There is no evidence that Mr. Fendelman knew anything about the amount of compensation paid any of the defendants after April 1, 1963. There is no evidence that he had anything to do with or knew anything about the financial affairs of the company; on the contrary, the evidence is that he did not. He had a right to rely on the directors and managing officers of the company to pay only reasonable compensa-

tion in the proper conduct of the business. Boulicault v. Oriel Glass Co., 283 Mo. 237, 223 S.W. 423. We hold that in these circumstances Mr. Fendelman did not acquiesce in the compensation paid these defendants after April 1, 1963, and that plaintiffs are not estopped from maintaining this action. Ruetz v. Topping, supra, 453 S.W.2d at 627; Boulicault v. Oriel Glass Co., supra, 223 S.W. at 427.

The judgment is reversed and the cause remanded with directions (1) that the court proceed to hear evidence and determine the amount of the excess, if any, of the compensation paid Meyer Lazaroff and Howard Wittner above reasonable compensation for their services, and (2) for entry of judgment consistent with this opinion.

All of the Judges concur.