[Cite as *Edelman v. JELBS*, 2015-Ohio-5542.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lynn Edelman, Individually and Derivatively on Behalf of EDCO Tool and Supply, Inc., | : | |
| | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | No. 14AP-512 |
| | | (C.P.C. No. 12CV-5688) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| JELBS, | : | |
| Defendant-Appellee, | : | |
| Samuel Richard Edelman et al., | : | |
| Defendants-Appellees/ Cross-Appellants. | : | |
| | : | |

D E C I S I O N

Rendered on December 31, 2015

*Zeiger, Tigges & Little LLP, Marion H. Little, Jr.* and *Christopher J. Hogan*, for appellant/cross-appellee.

*Porter, Wright, Morris & Arthur LLP, David S. Bloomfield, Jr.* and *Jared M. Klaus*, for appellees/cross-appellants.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant/cross-appellee, Lynn Edelman, Individually and Derivatively on Behalf of EDCO Tool and Supply, Inc., appeals from a judgment of the Franklin County Court of Common Pleas that granted compensatory and punitive damages, attorney fees, and permanent injunctive relief against defendants-appellees/cross-appellants, Samuel Richard Edelman, Jerry Zail Edelman, Barry David Edelman, and EDCO Tool and Supply, Inc. Appellees/cross-appellants have filed a cross-

appeal from the same judgment. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 1969, Ralph Edelman, along with his two brothers, incorporated EDCO Tool and Supply, Inc. ("EDCO"), a wholesaler and retailer of industrial tools, supplies, and machinery in the central Ohio and Lima, Ohio areas. The parties to this appeal are Ralph's four sons, each of whom began working at EDCO in the 1970s. The parties are equal 25 percent shareholders of all of EDCO's common stock. Until his death in 2008, Ralph maintained strict control over all aspects of EDCO's operations.

{¶ 3} Between 1993 and 1997, each of the parties received annual compensation of approximately $175,000. In August 1997, appellant resigned his full-time employment with EDCO; however, he retained his 25 percent shareholder interest in the company. Appellees remain as full-time employees, and they are the sole officers and directors of EDCO. As full-time employees, appellees have been involved in virtually all facets of the company, performing managerial duties such as strategic planning, sales, purchasing, customer service, and bookkeeping, as well as manual duties such as stocking the warehouse and sweeping floors.

{¶ 4} After leaving EDCO, appellant became embroiled in an ongoing dispute with appellees regarding access to EDCO's corporate and financial records. The dispute resulted in appellant filing a complaint against EDCO seeking to enforce his shareholder rights to examine EDCO's corporate and financial records. Appellant's legal action ultimately was resolved through an August 1998 settlement agreement between appellant and EDCO, the terms of which permitted appellant annual inspection of EDCO's corporate and financial records. Indisputably, appellees did not provide appellant with access to EDCO's corporate and financial records in accordance with the terms of the settlement agreement.

{¶ 5} At a shareholder's meeting held on June 30, 2005, appellees voted to adopt a resolution amending EDCO's articles of incorporation to create a new class of preferred stock to be issued to appellees. The amendment provided appellees, as preferred shareholders, absolute discretion to determine the amount and timing of preferred share dividend distributions. The amendment further provided appellees the authority to

liquidate EDCO's long-standing investment portfolio in order to fund preferred share dividend distributions. Appellant attended the meeting and voted against the amendment.

{¶ 6} After 2005, in addition to receiving individual annual salaries of approximately $60,000, appellees began making semi-annual determinations regarding whether and in what amount to award themselves preferred share dividends. Appellees made these determinations after considering general factors such as overall business climate, corporate needs, cost of living indexes, cost of doing business, historical wage and preferred share dividend payments, and the work performed by appellees. However, appellees did not utilize any specific criteria or methodology in determining whether to declare preferred share dividends and/or the amount of preferred share dividends to be distributed, nor did they consider EDCO's revenues or whether their compensation package was comparable to that of officers and directors of EDCO's competitors. Further, appellees made the preferred share dividend distribution decisions during informal meetings without memorializing their discussions. Because EDCO's revenues were often insufficient to fund the preferred share dividend distributions, appellees liquidated various long-term investments held by EDCO. Indisputably, appellees never notified appellant of the amount or frequency of preferred share dividend distributions.

{¶ 7} On May 3, 2012, appellant filed a verified complaint "individually and derivatively on behalf of EDCO" against EDCO and appellees. Appellant asserted claims against appellees for violation of various provisions in R.C. Chapter 1701, breach of fiduciary duty to both appellant and EDCO, and breach of the 1998 settlement agreement.[1] Appellant filed an amended verified complaint on November 21, 2012 asserting essentially the same claims set forth in his original complaint. Appellees answered and asserted a counterclaim against appellant for breach of fiduciary duty based on his alleged competition with EDCO.

{¶ 8} In a journal entry filed October 28, 2013, the trial court resolved the parties' dispute regarding the applicable statute of limitations on appellant's breach of fiduciary duty claim. In that entry, the court determined the applicable statute of limitations to be

---

[1] Appellant, a 25 percent minority shareholder in the JELBS partnership, also sought relief against appellees for misconduct in their capacities as controlling partners. The trial court's findings, conclusions, and orders with respect to JELBS are not at issue in this appeal.

four years. Having so found, the court concluded that appellees were insulated against any claim based specifically on the creation of the preferred class of stock in 2005, as such occurred beyond the four-year period preceding the filing of appellant's original complaint on May 3, 2012. The court further concluded, however, that the statute of limitations did not bar appellant's claims based on appellees' alleged ongoing misconduct in declaring preferred dividends in the four-year period preceding the filing of appellant's complaint. The court reasoned that "[e]very time a new preferred stock dividend is declared * * * within the four-year period before suit, [appellees] have had a new opportunity to observe their fiduciary duty." (Oct. 28, 2013 Journal Entry.)[2]

{¶ 9} Thereafter, in early November 2013, the trial court held a three-day bench trial on appellant's claims and appellees' counterclaim. The above facts are derived from the parties' testimony and related documentation, as well as several stipulations entered by the parties. In addition, both parties presented expert testimony.

{¶ 10} Rebekah Smith, a certified public accountant, testified as appellant's expert witness. Smith reviewed the information contained in EDCO's QuickBooks files, as formatted according to the QuickBooks accounting software program designed for small businesses. QuickBooks acts as a comprehensive general ledger system to track and generate reports for a variety of types of financial records, including sales, accounts receivable, accounts payable, inventory, and taxes. QuickBooks is an electronic file system only; it does not contain source documentation such as invoices, bank statements, and securities brokerage statements. According to Smith, the financial information contained in EDCO's QuickBooks files was neither sufficiently detailed, nor supported by adequate underlying documentation. Accordingly, Smith opined that appellees' maintenance of EDCO's financial records was inadequate.

{¶ 11} Smith further testified that she reviewed EDCO's tax returns for the relevant time period to determine the percentage of EDCO's taxable income paid in compensation to appellees (including both wages and preferred share dividends). According to Smith, this review revealed a significant decline in revenues and a significant increase in compensation as a percentage of revenues. Further, in multiple years, the total compensation paid appellees exceeded 100 percent of EDCO's net profits.

---

[2] Accordingly, all references in this decision to "the relevant time period" means the four-year time period from May 3, 2008 to May 3, 2012.

{¶ 12} Smith also stated that a review of EDCO's balance sheets for the relevant time period revealed a significant decrease in EDCO's investment portfolio. According to Smith, "substantially all" sales of EDCO's stocks were used to fund appellees preferred share dividend compensation. (Tr. Vol. II, 23.) Smith noted that compensation paid to an individual in the form of dividends is taxable at a much lower rate than compensation paid to an individual in the form of wages. Thus, appellees benefited personally from being compensated through the payment of dividends; however, such method of payment provided only a de minimis tax benefit to EDCO.

{¶ 13} Utilizing EDCO's QuickBooks files, Smith prepared a summary of the total compensation received by appellees for fiscal years 2007[3] through 2011, including wages and preferred share dividends. The summary demonstrated that appellees collectively were paid wages of $181,089, $181,017, $180,924, and $180,929 in fiscal years 2008 through 2011, respectively. As to preferred share dividends, appellees collectively were paid $285,000, $90,000, $570,000, $600,000, and $285,000 in fiscal years 2007 through 2011, respectively. Thus, during this time period, appellees' wages totaled $723,959 and preferred share dividends totaled $1,830,000. Smith opined that appellees "have overpaid themselves since May 3rd 2008" and that the current method of "dip[ping] into * * * the stock of the company [is] not a sustainable model. At some point, they will run out of assets and they won't have a viable company." (Tr. Vol. II, 35.)

{¶ 14} On cross-examination, Smith acknowledged that, prior to the 2005 amendment to EDCO's articles of incorporation, compensation paid to appellees was in the form of wages only; after the 2005 amendment, appellees were paid in wages and preferred share dividends. Smith identified plaintiff's exhibit No. 94 as a summary of wage compensation paid to EDCO's officers from 1994 through 2002. The officers (including appellant) were each paid wages of approximately $200,000 in 1994, $148,000 in 1995, $130,000 in 1996, and $185,000 in 1997. Following appellant's 1997 exit from EDCO and continuing to the time of the 2005 amendment, appellees were each paid wages of approximately $296,000 in 1999, $401,000 in 2000, $458,000 in 2001, $458,000 in 2002, $189,000 in 2003, and $95,000 in 2005. After 2005, appellees were

---

[3] Fiscal year 2007 incorporated only May 3, 2008 through June 30, 2008. All other fiscal years incorporated July 1 through the following June 30. Fiscal year 2012 was not included in the calculation because Smith had not yet received the pertinent information from appellees.

each paid approximately $60,000 in wages. Smith admitted on cross-examination that, in conducting her compensation analysis, she did not take into account the number of hours appellees worked at EDCO, nor did she consult any industry sources to determine a benchmark for appellees' compensation based on revenues.

{¶ 15} Barry Adelman, a certified public accountant, testified as appellees' expert witness. Adelman has provided tax preparation services for EDCO for over 20 years. In so doing, Adelman obtains an electronic copy of EDCO's QuickBooks files, along with underlying supporting documentation. Adelman opined that EDCO's record-keeping and use of QuickBooks "is a proper methodology of providing their own personal use for internal use and for me to prepare tax returns." (Tr. Vol. III, 151.) On cross-examination, Adelman clarified that his opinion as to the reasonableness of EDCO's record-keeping was limited to purposes of tax preparation and was not offered as an opinion as to the reasonableness of record-keeping as related to appellant as a minority shareholder.

{¶ 16} Regarding appellees' compensation package, Adelman stated that, prior to 2005, appellees' compensation was paid in the form of wages only. In 2005, appellees asked Adelman to opine as to the tax advantages of allocating a portion of their compensation package to preferred dividends. Adelman advised appellees that such allocation would benefit appellees individually and would have no negative tax consequences to EDCO. Based on this advice, appellees adjusted their compensation package to include preferred share dividends in addition to wages. Adelman acknowledged that, although EDCO's QuickBooks files included detailed information regarding the amount of appellees' compensation package paid in the form of wages versus preferred share dividends, no underlying supporting documentation revealed the rationale for setting those amounts.

{¶ 17} Adelman further testified that, from 1993 through 2011, EDCO's officer compensation package has exceeded its taxable income "[m]ore times than not." (Tr. Vol. III, 153.) After 2005, appellees utilized retained earnings or other company assets, including EDCO's investment portfolio, as a means of financing their compensation package. Adelman opined that appellees' method of financing their compensation package has not affected the long-term viability of the corporation, because EDCO has

consistently paid its bills, and the fair market value of the investments has remained "about the same." (Tr. Vol. III, 167.)

{¶ 18} On cross-examination, Adelman stated that, as a general rule, shareholders/owners of closely held corporations often finance their compensation packages through the use of retained earnings/investment portfolio "because they are the ones that are working in the business." (Tr. Vol. III, 168.) However, as to EDCO specifically, Adelman acknowledged that he was neither asked by appellees, nor did he independently consider, whether appellees' method of funding their compensation in this manner had any detrimental effect on appellant as a minority shareholder. However, in response to a question regarding whether, since 2008, the wages and preferred share dividends appellees paid themselves was reasonable with respect to appellant, Adelman averred, "[appellees'] salary and overall compensation package historically was reasonable * * * and did not have any bearing on its effect on * * * a passive shareholder." (Tr. Vol. III, 171.) He later stated, however, that he had no opinion "as to whether the amount paid in compensation either as dividends or wages to [appellees] is fair to [appellant]." (Tr. Vol. III, 180.)

{¶ 19} Following the conclusion of trial, the trial court issued preliminary findings of fact and conclusions of law on the record. As pertinent here, the court determined that appellees breached their heightened fiduciary duty to appellant as a minority shareholder in "taking excessive preferred dividends for themselves" out of EDCO's "long-term cash reserves accumulated mostly while [appellant] was still employed" that "really belonged to all the shareholders." (Tr. Vol. III, 319, 321.) The trial court noted that the justification set forth for the creation of the preferred class of stock was to "materially enhance [appellees'] tax returns" with "very little or no real significant purpose for EDCO." (Tr. Vol. III, 320.) The court further noted that, during this period, "EDCO was not profitable and could not have funded this scheme without dipping into the old retained earnings" and that appellees neither documented their decision making process nor disclosed the amount or frequency of the distributions to appellant. (Tr. Vol. III, 320.)

{¶ 20} Further noting that appellees' annual compensation package was approximately $200,000, the court stated that "the thought of paying $200,000 a year to three employees whose duties include opening boxes and sweeping floors and answering

phones or doing other work of a nominal almost minimum-wage content is just ridiculous." (Tr. Vol. III, 322.) The court continued:

> No outside businessman coming into EDCO and seeking to make the best of this long-term business would have tolerated that. They would have laid off a couple of the $200,000 employees and hired some minimum wage guys. They wouldn't have kept people around with college degrees when the business couldn't support them just because they were in the family.
>
> And if that had happened, more money would have flowed to the bottom line and then would have been available as dividends to all four common shareholders.

(Tr. Vol. III, 322.) The court further observed:

> [T]he damages that are due here ought to be done by re-casting the combination of salary and preferred stock between 2008 and 2013 that's been paid to the three insiders.
>
> The three insiders, clearly, are due something for salary. I probably can say * * * as a matter of course that it's at least 60 thousand bucks a year, but there's a large range between 60 and 200 for these people, and at some point I'm leaning toward about a hundred thousand.

(Tr. Vol. III, 324.)

{¶ 21} The trial court provided the parties the opportunity to submit proposed findings of fact and conclusions of law. Following those submissions, the court, on January 23, 2014, issued extensive written findings of fact and conclusions of law ("Jan. 23, 2014 Findings"). Therein, the trial court determined that appellees violated various provisions of R.C. Chapter 1701 pertaining to corporate record-keeping and disclosure. The court determined that the appropriate relief for said violations was the issuance of permanent injunctive relief enforcing appellant's statutory rights.

{¶ 22} The court further determined that appellees breached their fiduciary duty to appellant and that he was entitled to both compensatory and punitive damages resulting from said breach. More specifically, the court found that the total compensation packages for each of the appellees was "grossly disproportionate to the value each man brought to his work," and that appellees' failure to disclose their overall compensation arrangement

to appellant "leaves the clear inference that each of them recognized that they were participating in an excessive compensation package intended to loot long-term corporate financial reserves at [appellant's] expense." (Jan. 23, 2014 Findings, ¶ 53-54.) The court further determined, however, that appellees' misconduct was not so extreme as to trigger the "faithless servant" doctrine. More specifically, the court stated:

> While [appellees] improperly misappropriated long-term financial reserves from EDCO over and above amounts reasonably due them as salary and benefits, and did not do well in operating EDCO, this is not such an extreme situation as to trigger the "faithless servant" doctrine. Therefore, the wrongdoing proven here by these insiders does not demand that they forfeit all or substantially all their *reasonable* compensation, because there was not manifest disloyalty to the business itself. * * * [A]t its heart what occurred here reflects not so much the [appellees'] manifest disloyalty to the business itself but rather a stubborn, malicious and misguided scheme to deprive the sole minority shareholder of his rights (financial and otherwise).

(Emphasis sic.) (Jan. 23, 2014 Findings, ¶ 81.) The court awarded appellant compensatory damages "measured by his 25% share of all the excess, purported 'compensation' taken by each [appellee] above $100,000 per year since 2008" based on appellees' breach of fiduciary duty in "misappropriat[ing] EDCO reserves to overpay themselves." (Jan. 23, 2014 Findings, ¶ 86.)

{¶ 23} The court also determined that appellees breached and/or tortiously interfered with the 1998 settlement agreement. The court further stated that it "disregarded" appellant's derivative claim relative to EDCO because such claim provided "no greater or different relief than his individual claim." (Jan. 23, 2014 Findings, ¶ 12.) Lastly, the court rejected appellees' counterclaim. The court set an evidentiary hearing for April 4, 2014 to receive evidence regarding appellant's attorney fees and to set the amount of compensatory and punitive damages.

{¶ 24} On April 3, 2014, the parties filed written stipulations with regard to the April 4, 2014 hearing. As pertinent here, the stipulations included appellant's request for an award of compensatory damages "in the amount of 25-percent of the combined wage and preferred share dividend compensation in excess of $100,000 per year per [appellee] received from EDCO during each fiscal year since May 3, 2008." (Apr. 3, 2014

Stipulations, ¶ 4.)  Appellant qualified his request with language preserving his "objection to the Court's decision not to apply the faithless servant doctrine to require [appellees] to disgorge all compensation received from EDCO during the period of disloyalty." (Apr. 3, 2014 Stipulations, ¶ 4.)   The stipulations also included appellees' opposition to any damage award.  In addition to the foregoing, the parties stipulated the combined wages and preferred dividends received by each of the appellees for fiscal years 2007 through 2012.[4]  The stipulations specifically stated that each of the appellees received $115,000, $90,363.00, $250,339.00, $260,308.00, $155,309.66, and $240,000.00 for fiscal years 2007 through 2012, respectively.

{¶ 25} Following the April 4, 2014 hearing, the trial court issued a final judgment on May 29, 2014.  In its judgment, which expressly incorporated its January 23, 2014 findings of fact and conclusions of law, the trial court awarded appellant damages jointly and severally against appellees of: (1) $3,065 based on his breach of contract claim; (2) $468,000 based on his breach of fiduciary duty claim; (3) $218,704 in attorney fees and expenses; and (4) $120,000 in punitive damages.  The trial court also issued permanent injunctive relief which, as pertinent here, permits appellant semi-annual access to EDCO's paper and computerized corporate records.

## II.  ASSIGNMENTS OF ERROR

{¶ 26} Appellant advances three assignments of error for our review:

> 1. The Trial Court erred, as a matter of law, in failing to properly apply the faithless servant doctrine to its factual findings recognizing the malicious, repeated, and long-standing disloyalty of Defendants Jerry, Samuel, and Barry Edelman (the "Edelman Defendants") in breach of their fiduciary duties owed directly to Plaintiff Lynn Edelman ("Lynn Edelman").
>
> 2. Alternatively, the [T]rial Court erred in disregarding Lynn Edelman's derivative claim, given the Edelman Defendants' clear breach of their fiduciary duties of loyalty to EDCO.
>
> 3. The Trial Court erred, as a matter of law, in awarding Lynn Edelman injunctive relief—based on, *inter alia,* Defendants' adjudged violations of R.C. 1701.37—that imposes temporal

---

[4] Fiscal year 2007 encompassed only May 3, 2008 through June 30, 2008. All other fiscal years encompassed July 1 through the following June 30.

limitations on his inspection rights that are inconsistent with the statute.

{¶ 27} Appellees assert two cross-assignments of error:

[1.] The Trial Court Erred in Placing the Burden of Proof on Jerry, Barry, and Sam to Prove the Reasonableness of Their Compensation.

[2.] The Trial Court's Finding That Jerry, Barry, and Sam Received Excessive Compensation From EDCO Is Against the Manifest Weight of the Evidence.

## III. DISCUSSION

### A. Appellees' First Cross-Assignment of Error − Whether the Burden was on Appellees to Prove the Reasonableness of their Compensation

{¶ 28} We note initially that "[a] determination of the burden of proof is a question of law." *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist. No. 05AP-161, 2006-Ohio-1160, ¶ 17, citing *Acuity, Inc. v. Trimat Constr.,* 4th Dist. No. 05CA2, 2005-Ohio-6128, ¶ 17.  An appellate court reviews questions of law de novo. *Id.* at ¶ 17*,* citing *Cleveland Elec. Illuminating Co. v. Pub. Utilities Comm.,* 76 Ohio St.3d 521, 523 (1996).

{¶ 29} As the facts indicate, EDCO is a close corporation, which is defined as "a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market." *Crosby v. Beam,* 47 Ohio St.3d 105 (1989), paragraph one of the syllabus.  "Ownership of close corporations is 'limited to a small number of people who are dependent on each other for the enterprise to succeed.' " *Wheeler v. Johnson,* 2d Dist. No. 22178, 2008-Ohio-2599, ¶ 24, quoting *Tinter v. Lucik,* 172 Ohio App.3d 692, 2007-Ohio-4437, ¶ 23 (8th Dist.).  Minority shareholders of close corporations are peculiarly susceptible to misuse or abuse by the majority shareholders. *Franks v. Rankin,* 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 31, citing *Kademian v. Marger,* 2d Dist. No. 24256, 2012-Ohio-962, ¶ 58.  One common abuse of power involves the payment of excessive compensation to majority shareholders or corporate officers. *Bell v. Bell*, 6th Cir. No. 96-3655 (Dec. 3, 1997).  "Given the extensive opportunities for abuse under a close corporation structure, ensuring that majority shareholders of close corporations advance the corporation's, and not their personal, interests is critical." *Id.*  Accordingly, majority

shareholders of close corporations owe minority shareholders a heightened fiduciary duty of good-faith and loyalty. *Franks* at ¶ 31, citing *Crosby* at 108.

{¶ 30} "In a close corporation, a majority shareholder breaches a fiduciary duty when that shareholder manipulates his or her control over the close corporation in order to unfairly acquire personal benefits owing to or not otherwise available to minority shareholders of the close corporation." *Yackel v. Kay,* 95 Ohio App.3d 472, 478 (8th Dist.1994), citing *Crosby.* In the present case, the trial court found that appellees, as majority shareholders, breached their heightened fiduciary duty to appellant, the minority shareholder, by paying themselves excessive compensation. In so finding, the trial court placed the burden of proving the reasonableness of their compensation on appellees.

{¶ 31} When a minority shareholder of a close corporation brings suit against a controlling shareholder for breach of his or her fiduciary duties, a presumption arises that the fiduciary, by virtue of his or her superior position, bears the burden of proof with respect to the fairness of his or her actions. *Id.* at 480. Consistent with this presumption, the fiduciary must demonstrate that his or her actions were fair, reasonable, and based on a full disclosure of relevant information. *Bell*; *Biggins v. Garvey*, 90 Ohio App.3d 584, 597 (11th Dist.1993) (noting that a director employee has the burden "to justify his salary and to show the reasonableness thereof"); *Soulas v. Troy Donut Univ., Inc.*, 9 Ohio App.3d 339, 341 (10th Dist.1983), citing *Fendelman v. Fenco Handbag Mfg. Co.,* 482 S.W.2d 461 (Mo.1972) (finding rule that directors bear the burden of establishing the reasonableness of their compensation applied with "particular force * * * since their salaries were increased at a meeting to which * * * the minority director[] was not invited").

{¶ 32} Citing *Mlinarcik v. E.E. Wehrung Parking, Inc.,* 86 Ohio App.3d 134 (8th Dist.1993), appellees contend that the trial court improperly burdened them with proving the reasonableness of their compensation. In *Mlinarcik*, the court asserted that each case must be considered separately on the merits when determining which party bears the burden of proving the reasonableness or unreasonableness of compensation paid to majority shareholders. *Id.* at 139. In *Mlinarcik,* the compensation paid the majority shareholders was consistent since 1982. The minority shareholder had received dividends and annual reports since that time and had actual notice, or by due diligence should have

been on notice as to the majority shareholders' compensation, but did not challenge it until 1989. *Id.* at 140. The *Mlinarcik* court appears to have concluded that the plaintiff minority shareholder implicitly ratified the compensation and that, therefore, the burden of proof should remain with the plaintiff. Indeed, the court stated that "[w]e see no reason to apply an exception and upset the general rule that the burden of proof rests on the party challenging the cause. So it is up to [plaintiff] to prove that [defendants'] compensation was excessive and unreasonable." *Id.*

{¶ 33} Contrary to appellees' assertions, *Mlinarcik* is distinguishable. Here, appellees voted to amend EDCO's articles of incorporation to create a preferred class of stock for themselves over appellant's objection. Further, appellees set the amount and frequency of prepared share dividend distributions without documentation of the decision-making process or disclosure to appellant. Appellant was provided no access to corporate and financial records or other information regarding the compensation appellees paid themselves. Thus, appellant could not have implicitly ratified the compensation. Moreover, *Mlinarcik*, in suggesting that a court must evaluate the facts underlying each unreasonable compensation claim before determining with whom the burden of proof lies, contradicts the weight of Ohio authority on this issue, which squarely places the burden of proof on this issue on the fiduciary. *See Yackel*; *Biggins*; *Soulas.* As *Mlinarcik* does not reflect the current law of Ohio, or, more particularly, of this court, we find that appellees' reliance on *Mlinarcik* is misplaced. We therefore conclude that the trial court did not err in placing the burden of proof on appellees to show the reasonableness of their compensation.

{¶ 34} Appellees' first cross-assignment of error is overruled.

### B. Appellees' Second Cross-Assignment of Error – Whether the Trial Court's Ruling that Appellees Received Excessive Compensation from EDCO was Against the Manifest Weight of the Evidence

{¶ 35} "In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. "[T]he standard [illustrating the differences between sufficiency and manifest weight] set forth in *Thompkins* also applies in civil cases." *Id.* at ¶ 17, citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997).

{¶ 36} Sufficiency of the evidence is:

> " 'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."

*Eastley* at ¶ 11, quoting *Thompkins* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). By contrast, weight of the evidence:

> "* * * concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' "

(Emphasis sic.) *Id.* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's* at 1594.

{¶ 37} Appellees argue that the trial court erred in finding their annual compensation of $200,000 to be excessive. Appellees contend the trial court's finding in this regard was made without proper analysis of the factors set forth by this court in *Soulas*. In *Soulas*, we stated that "[t]he compensation paid to corporate officers and directors must bear a reasonable relationship to the value of services rendered." *Id.* at paragraph one of the syllabus. We further stated that "[i]n determining the reasonableness of the compensation, all relevant factors should be considered, which would primarily include: (1) whether there has been an increase in the business of the corporation, (2) the amount of compensation paid to employees for comparable work by similar corporations in the same industries, and (3) whether there has been a proportionate increase in the duties and responsibilities of the officer employees in connection with the substantial increase in their compensation." *Id.* at 341.

{¶ 38} We disagree with appellees' assertion that the trial court did not engage in a proper analysis of the reasonableness of appellees' $200,000 annual compensation package. As noted in *Soulas*, a trial court should consider "all relevant factors" in determining the reasonableness of executive compensation. *Id.* In the present case, the trial court noted that the bulk of appellees' compensation was paid in the form of

preferred share dividends, which were denied appellant.  The court also noted that appellees did not utilize any specific criteria or methodology in determining the amount of preferred share dividends to be distributed, did not document their decision-making process, and did not disclose to appellant the amount or frequency of the distributions.  In addition, the court noted that the preferred share dividend distributions were made during a time EDCO was not profitable and that these dividend distributions had to be paid from long-term cash reserves which had largely accumulated while appellant was still employed at EDCO.  The court additionally noted that the justification for creating the preferred class of stock was to personally benefit appellees by decreasing their individual income tax burdens.  Moreover, the trial court had before it Smith's expert opinion testimony that appellees "have overpaid themselves since May 3rd 2008."  (Tr. Vol. II, 35.)  The trial court expressly found Smith to be "a very well-qualified, objective, and credible witness."  (Jan. 23, 2014 Findings, ¶ 36.)

{¶ 39} Although the trial court did not consider whether appellees' compensation was comparable to that received by similarly situated officers and directors in the industry, appellees' argument in this regard is unavailing.  As noted above, appellees bore the burden of proving the reasonableness of their compensation.  That the trial court had no comparable compensation evidence before it was subject to appellees' burden to offer it, which they did not.  There is no basis to now attack the trial court's decision for this lack of evidence.

{¶ 40} The decision of the trial court was not against the manifest weight of the evidence, and appellees' second cross-assignment of error is overruled.

### C. Appellant's First Assignment of Error – Whether the Trial Court Should Have Applied the Faithless Servant Doctrine in Respect to the Relationship Between Appellees and Appellant

> [D]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his *entire agreed compensation,* due to the failure of such an employee to give the stipulated consideration for the agreed compensation. Further, as public policy mandates, an employee cannot be compensated for his own deceit or wrongdoing. However, an employee's compensation will be denied only during his period of faithlessness.

(Emphasis sic.)  *Roberto v. Brown Cty. Gen. Hosp.*, 59 Ohio App.3d 84, 86 (12th Dist.1989) (adopting the "faithless servant" doctrine and paraphrasing the Supreme Court

of Kansas in *Bessman v. Bessman,* 214 Kan. 510 (1974). Applying the faithless servant doctrine, the *Roberto* court held that an employer was entitled to withhold three years of deferred compensation from a hospital administrator who had embezzled from the hospital.

{¶ 41} This court has similarly interpreted the faithless servant doctrine in the employer/employee context. In *Goal Sys. Internatl., Inc. v. Klouda*, 10th Dist. No. 84AP-168 (Oct. 10, 1985), this court affirmed an award for an employer for a portion of a disloyal employee's salary when, following his termination from employment, the former employee, a program developer, tried to market his computer program through a competitor.

{¶ 42} Appellant asserts that the trial court erred as a matter of law in failing to properly apply the faithless servant doctrine to its factual findings, "recognizing the malicious, repeated, and long-standing disloyalty of Defendants Jerry, Samuel, and Barry Edelman * * * in breach of their fiduciary duties owed directly to Plaintiff Lynn Edelman." (Appellant's Brief, 1.) We agree with the trial court that there is a duty of majority shareholders to minority shareholders of a closely held corporation. *Yackel* at 478, citing *Crosby*. In fact, we recognize a "heightened fiduciary duty of good faith and loyalty" of majority shareholders of close corporations owed to minority shareholders. *Franks* at ¶ 31. However, that is not the same thing as concluding that employees of a corporation are servants of the shareholders who can be faithless to the shareholders in the relevant sense.

{¶ 43} A recent case considering the faithless servant doctrine in the context of close corporations is instructive. *Buckingham, Doolittle & Burroughs, L.L.P. v. Bonasera*, 157 Ohio Misc.2d 1, 2010-Ohio-1677. The *Buckingham* court conducted a general overview of application of the faithless servant doctrine and showed that the doctrine is more commonly applied in pure employment situations. *Id.* at ¶ 54. Nevertheless, the *Buckingham* court held that it "may be possible" that shareholder attorneys who departed a firm en masse were faithless servants in respect to the firm. *Id.* at ¶ 57.

{¶ 44} We hold that the faithless servant doctrine should not be applied in this context. Appellees, though they owed fiduciary duties to appellant (since appellant was a

shareholder in the company), were servants of the company, EDCO, not appellant, and therefore could not have been faithless to appellant in the relevant sense.

{¶ 45} Appellant's first assignment of error is overruled.

### D. Appellant's Second Assignment of Error – Whether the Trial Court Erred in Disregarding Appellant's Derivative Action Claims

{¶ 46} As an alternative to his first assignment of error, appellant asserts that the trial court erred in disregarding his derivative claim, "given the Edelman Defendants' clear breach of their fiduciary duties of loyalty to EDCO."  (Appellant's Brief, 1.)

> The derivative form of action permits an individual shareholder to bring "suit to enforce a *corporate* cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534, 24 L. Ed. 2d 729, 90 S. Ct. 733 (1970). Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949).

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991).  When a shareholder derivative action is brought (as an equitable action) by a shareholder on behalf of the corporation, it is because the corporation has failed to enforce a right which may properly be asserted by it.  Civ.R. 23.1, *Biggins* at 588.  Such is appropriately brought by a minority shareholder, especially if majority shareholders are breaching their fiduciary duties to the corporation. The actions of the minority shareholder and the derivative action of such a shareholder on behalf of a corporation are not necessarily identical in interest or process.

{¶ 47} Moreover, in *Columbus Homes Ltd. v. S.A.R. Constr. Co.,* 10th Dist. No. 06AP-759, 2007-Ohio-1702, this court applied the faithless servant doctrine in a similar context.  There, the plaintiff was a passive investor in a number of the defendant's business enterprises, including S.A.R. Construction.  *Id.* at ¶ 4.  After the parties had a falling out, the defendant formed a new company to which he transferred all of the business, operations, and capital of S.A.R. and refused to allow the plaintiff an opportunity to participate in the new company.  *Id.* at ¶ 6.  The plaintiff thereafter asserted several claims against the defendant, including a derivative claim on behalf of S.A.R. for disgorgement of the defendant's compensation under the faithless servant doctrine.  *Id.* at ¶ 7, 51.  The trial court agreed that the defendant had been a faithless

servant to S.A.R. and ordered the full disgorgement of his compensation from S.A.R. and from the shell entity the defendant set up to pilfer S.A.R.'s assets and business. *Id.* at ¶ 51. On appeal, this court noted that "[t]he faithless servant doctrine states that an agent is entitled to no compensation for conduct which is disobedient or a breach of his duty of loyalty." *Id.* at ¶ 52 citing *Fin. Dimensions, Inc. v. Zifer*, 1st Dist. No. C-980960 (Dec. 10, 1999). We affirmed the trial court's application of the faithless servant doctrine, finding that "[t]he very act of forming and operating [the new entity] was a misappropriation of corporate assets, misappropriation of a corporate opportunity, and a breach of [the defendant's] duty to appellees." *Id.* at ¶ 53.

{¶ 48} Despite the fact that EDCO is closely held, the facts show that the company was not started by these four shareholders. It has been an ongoing entity since it was started by the parties' father, Ralph, prior to the 1970s, when the parties began to work in the family business. When the trial court elected not to apply the "faithless servant doctrine," to award damages to appellant personally, it should have recognized appellant's derivative action on behalf of EDCO, especially in its efforts to restore excessive payments that had been made from corporate profits and investments to the preferred shareholders. In other words, while it was perfectly appropriate to award compensation to appellant, the trial court should have recognized that the corporation, itself, had been harmed by these shareholders' actions and should also have been placed in a better position. This is especially true in light of the accountant's testimony (Adelman) that EDCO's officer compensation package has exceeded its taxable income "[m]ore times than not." (Tr. Vol. III, 153.) The trial court's denial of equitable relief to the corporation through appellant's derivative shareholder action left the corporation in a weakened condition.

{¶ 49} We sustain appellant's second assignment of error and remand the case for consideration of appellant's derivative action and the faithless servant doctrine in that context.

### E. Appellant's Third Assignment of Error – Whether Prospective Temporal Limitations Imposed by the Court on Appellant's Right to Inspect EDCO's Records are Consistent with R.C. 1701.37

{¶ 50} In his third assignment of error, appellant argues that the trial court erred as a matter of law in issuing injunctive relief that limits appellant's right of access to EDCO's corporate and financial records to twice per calendar year. Appellant contends

the temporal limits imposed by the trial court are inconsistent with his rights under R.C. 1701.37(C).

{¶ 51} R.C. 1701.37(C) provides, in pertinent part, that:

> Any shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney *at any reasonable time* and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof.

(Emphasis added.)

{¶ 52} The trial court's May 29, 2014 judgment entry includes the following language in relevant part:

> **II. DECLARATORY AND INJUNCTIVE RELIEF.**
>
> The Court also hereby enters the following permanent injunctive relief * * *:
>
> * * *
>
> **5. *Integrity and Retention of Financial Records*.**
>
> * * *
>
> **(C) *Periodic Access to Paper Copies of Financial Records***
>
> No later than ten (-10-) business days after receipt of a written request from Plaintiff, but no more frequently than twice per calendar year, all such persons or entities subject to this order are further permanently enjoined to provide Plaintiff with access to paper copies of all Financial Records of EDCO * * *.
>
> **(D) *Access to "Live" QuickBooks computerized records of EDCO*.**
>
> In addition to the access to paper copies otherwise ordered under ¶¶ 5(C) * * * of this order, upon written request Defendants shall provide Plaintiff's outside accountant or attorneys with a complete and up-to-date electronic copy of EDCO's QuickBooks system. * * * QuickBooks electronic −

access requests by Plaintiff shall not be made more than two
times per calendar year.

{¶ 53} R.C. 1701.37(C) confirms, but does not limit, the common law right of a shareholder to examine corporate records *at any reasonable time*. *Danziger v. Luse*, 103 Ohio St.3d 337, 2004-Ohio-5227, ¶ 10-11. R.C. 1701.37(C) therefore does not provide a legal basis for prospectively and proverbially "Solomon-izing" the question of shareholder access. Even if R.C. 1701.37 were not less extensive than the common law right which it confirms, R.C. 1701.37 clearly and unequivocally provides that timing of a written demand to inspect corporate records may be "at any reasonable time" and it takes little imagination to envision times (around significant events in the life of a company, for instance) when it might be "reasonable" to inspect the corporate records even though the records had already been inspected twice within the last 365 days. R.C. 1701.37 cannot and should not be taken as a license to any court to prospectively parse or mete out "reasonable time" based on setting arbitrary numbers of requests permitted to be made, especially in equity and especially considering that R.C. 1701.37 is less extensive than the preexisting common law right of shareholders to inspect the records of the companies in which they own stock. *Danziger* at ¶ 10-11. As the Supreme Court of Ohio put it:

> Nor is the right [to inspect] limited to one inspection. It is an incident to ownership of stock, and may be exercised at any reasonable time so long as the relation of stockholder subsists. The right * * * rests * * * upon the broad ground that the business of the corporation is not the business of the officers exclusively, but is the business of the stockholders. *Phoenix Iron Co. v. Commonwealth*, 113 Pa. St., 563; *Mutter v. Ry. Co.*, L. R. 38 Chy. Div., 92.

*Cincinnati Volksblatt Co. v. Hoffmeister*, 62 Ohio St. 189, 199 (1900).

{¶ 54} While inspecting twice per year may, in most years, be all that is reasonable, we nonetheless sustain appellant's third assignment of error in order to avoid unintended consequences that could harm the rights of all shareholders.

## IV. CONCLUSION

{¶ 55} We overrule both of appellees' cross-assignments of error and appellant's first assignment of error. However, we sustain appellant's second and third assignments of error and remand this case to the Franklin County Court of Common Pleas with instructions that it consider the derivative action of appellant on behalf of EDCO, and in

awarding damages, include the corporation.  We also instruct the trial court that it need not fashion a remedy for appellant to inspect the records of EDCO, but that if it does so, it should not construct temporal limitations in doing so.

*Judgment affirmed in part, reversed in part;*
*cause remanded with instructions.*

HORTON, J., concurs.
DORRIAN, J., concurs in part and dissents in part.

DORRIAN, J., concurring in part and dissenting in part.

{¶ 56} I respectfully concur in part and dissent in part.

{¶ 57} I concur with the majority to overrule appellees' first cross-assignment of error.

{¶ 58} I concur with the majority to overrule appellees' second cross-assignment of error.

{¶ 59} I concur with the majority to overrule appellant's first assignment of error.

{¶ 60} I dissent from the majority's conclusion to sustain appellant's second assignment of error.

{¶ 61} I dissent from the majority's conclusion to sustain appellant's third assignment of error.

_____